IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

FILED
April 24, 2023
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 21-1001
_____

CITY OF WHEELING,
Defendant Below, Petitioner

v.

THE PUBLIC SERVICE COMMISSION OF WEST VIRGINIA
and THE CITY OF BENWOOD,
Respondents.

_____

Appeal from the Public Service Commission of West Virginia
Case No. 21-0372-S-WI

VACATED

_____

Rehearing Granted September 20, 2022.
Submitted Upon Rehearing January 10, 2023.
Filed April 24, 2023.

Robert R. Rodecker, Esq.
John R. McGhee, Esq.
KAY CASTO & CHANEY PLLC
Charleston, West Virginia
Counsel for Petitioner

Rosemary Humway-Warmuth, Esq.
Office of City Solicitor
City of Wheeling
Wheeling, West Virginia
Counsel for Petitioner

Jessica M. Lane, Esq.
Jeffrey A. Foster, Esq.
Natalie E. Thomas, Esq.
Public Service Commission of West Virginia
Charleston, West Virginia
Counsel for Respondent

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD and JUSTICE HUTCHISON dissent and reserve their rights to file separate opinions.

SYLLABUS BY THE COURT

1.    "In reviewing a Public Service Commission order, we will first determine whether the Commission's order, viewed in light of the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. We will examine the manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. Finally, we will determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection to the relevant public interests, both existing and foreseeable. The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors."   Syllabus Point 2, *Monongahela Power Co. v. Public Service Commission of West Virginia*, 166 W. Va. 423, 276 S.E.2d 179 (1981).

2.    "The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W.Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper."   Syllabus Point 1, *Central West*

*Virginia Refuse, Inc. v. Public Service Commission of West Virginia*, 190 W. Va. 416, 438 S.E.2d 596 (1993).

3.      "'In the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meaning.' Syl. pt. 1, *Tug Valley v. Mingo Cty. Comm'n*, 164 W.Va. 94, 261 S.E.2d 165 (1979)." Syllabus Point 7, *Wheeling Park Commission v. Dattoli*, 237 W. Va. 275, 787 S.E.2d 546 (2016).

4.      "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syllabus Point 1, *Nelson v. West Virginia Public Employees Service Board*, 171 W. Va. 445, 300 S.E.2d 86 (1982).

5.      The 120-day dispute resolution period set forth in West Virginia Code § 24-2-1(b)(6) (2021) commences on the date a request for investigation is filed with the Public Service Commission pursuant to that statute.

WALKER, Chief Justice:

The City of Wheeling sells wholesale sewage treatment service to the City of Benwood. In April 2021, Wheeling increased the wholesale rate it charges to Benwood by 45%. Benwood complained to the Public Service Commission about the rate hike in May 2021 under West Virginia Code § 24-2-1(b)(6) (2021). That statute requires the Commission to resolve complaints like Benwood's "within 120 days of filing," although that period may be tolled to permit the Commission to gather information. The Commission entered the final order resolving Benwood's complaint in November 2021, after issuing three tolling orders the prior June, July, and October. Wheeling now asks us to vacate that final order, arguing that the Commission exceeded its statutory authority by entering that final order more than 120 days after Benwood filed its complaint. We agree based on the plain language of the statute and so vacate the Commission's order of November 12, 2021.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Wheeling contests the November 2021 final order of the Commission on jurisdictional grounds. Wheeling doesn't challenge the substance of that order in this

---

[1] Wheeling petitioned the Commission to reconsider its November 12, 2021 order and to stay that order pending appeal. The Commission denied that petition by order entered December 1, 2021. That order is vacated as well for the reasons discussed below.

appeal, so the following discussion is limited. We first outline the context of this dispute, then detail pertinent procedural events before the Commission.

Wheeling is what is known as a "locally rate-regulated" utility (LRR). LRRs are "political subdivisions of this state providing separate or combined water and/or sewer services and having at least 4,500 customers and annual combined gross revenues of $3 million . . . ."[2] In 2015, the Legislature circumscribed the Commission's jurisdiction over LRRs, specifically finding that they "are most fairly and effectively regulated by the local governing body with respect to rates, borrowing and capital projects."[3] The Legislature detailed the Commission's jurisdiction over LRRs in West Virginia Code § 24-2-1. In this case, we are concerned with § 24-2-1(b)(6) (2021), which we discuss in detail, below.

Wheeling sells sewer service to Benwood. On April 6, 2021, Wheeling raised the rate charged to Benwood for that service by 45%, effective May 21, 2021. Wheeling filed that ordinance with the Commission on April 14, 2021. On May 3, 2021, Benwood filed a complaint with the Commission under § 24-2-1(b)(6). Benwood asserted that the increased rate was "unfair, unreasonable, [and] discriminatory . . . ."[4] Benwood

---

[2] W. Va. Code § 24-2-1(b) (2021).

[3] W. Va. Code § 24-1-1(j) (2015).

[4] Benwood labelled its initial filing as a "Formal Complaint," although § 24-2-1(b)(6) refers to a "request for an investigation" as the filing that kicks off a proceeding under that statute. The parties appear to agree that Benwood's Formal

2

also alleged that the increased rate—adopted by Wheeling to fund capital projects—was not based on Benwood's proportionate share of the project's scope of work.

Wheeling sent a letter to the Commission on May 27, 2021 (24 days after Benwood filed its complaint). In that letter, Wheeling acknowledged Benwood's complaint and suggested that, as of May 27, the Commission had issued neither an order to investigate Benwood's complaint nor an order requiring Wheeling to answer the complaint.[5] Wheeling included its answer to Benwood's complaint with the May 27 letter. The Commission entered an order noting Wheeling's May 27 answer on June 2, 2021 (30 days after Benwood filed its complaint). There, the Commission concluded that Wheeling "ha[s] not filed sufficient support for the rates, fees and charges in its municipal ordinance to facilitate Commission evaluation" of Benwood's complaint. The Commission concluded that § 24-2-1(b)(6) empowered it to "toll the running of the statutory period for resolution of Benwood's complaint pending the filing of necessary supporting information of a municipal ordinance." It then ordered Wheeling to file the requested information— including a class cost of study (CCOS)—no later than 30 days from the order date. The Commission then tolled the "running of the statutory period of resolution of the complaint

---

Complaint equates to a request for investigation under § 24-2-1(b)(6), so we use the terms interchangeably in this Opinion.

[5] *Cf.* W. Va. Code R. § 150-1-6.2.5 (2019) ("Upon the filing of a formal complaint and the issuance of an order to investigate, the Commission will require that a copy of the complaint be served on each defendant, together with a copy of an order requiring each defendant to satisfy or answer the complaint within ten (10) days.").

for a period of 45 days, resulting in a statutory decision due date of Friday, October 15, 2021."

Wheeling filed the information requested by the Commission in the June 2 order, including the CCOS, on July 2, 2021. On July 14, Commission staff notified Wheeling of an error in the CCOS. Wheeling submitted a revised CCOS the next day, July 15. On July 19, Commission staff moved the Commission to "exercise its statutory authority under Code §24-2-1(b)(6) and toll [the Benwood-Wheeling dispute] for an additional thirteen (13) days from October 15, 2021, or until October 28, 2021" to put staff "in the posture that [they] should have been in on July 2, 2021, but for the flawed [s]tudy filed by Wheeling." The Commission granted that motion on July 22, finding that (1) the then-current statutory deadline was October 15, 2021, (2) it was "reasonable to toll the running of the statutory deadline . . . and Staff Report due dates for 13 days," and (3) "ORDERED that the running of the statutory deadline is tolled until September 28, 2021."

The administrative law judge issued a recommended decision on September 13, 2021, in which he recommended that the Commission adopt the rate passed by Wheeling the prior April. Benwood and Commission staff filed exceptions to the

4

recommended decision in late September.[6]  Wheeling replied to Benwood and the Commission in early October.

The Commission filed a third order tolling the statutory, 120-day deadline to resolve the Benwood-Wheeling dispute on October 26.  In that order, the Commission stated that

> [g]iven the complexity of this case and need for additional time for Commission consideration and review, the Commission will invoke its authority under W. Va. Code § 24-2-1(b)(6) to toll the statutory period 120 days from the date Wheeling filed a Revised [CCOS], being July 15, 2021.  The statutory deadline in this case should be extended to November 12, 2021.
>
> . . . .
>
> IT IS THEREFORE ORDERED that the running of the statutory period for resolution of this matter is tolled 120 days from July 15, 2021, resulting in a statutory decision due date of Friday, November 12, 2021.

The Commission entered its final decision on November 12, 2021, declining to adopt the administrative law judge's recommended decision.[7]  Ten days later, Wheeling petitioned the Commission to reconsider its November 12 order.  Wheeling contended that

---

[6] The West Virginia Water Development Authority (WDA) participated in the proceedings before the Commission as amicus curiae.  The WDA responded to Commission staff's exceptions and advocated adoption of the administrative law judge's proposed order.

[7] The Commission ordered Wheeling to adopt a recalculated wholesale sewer rate effective that day.

5

the Commission had exceeded its authority under the plain and unambiguous language of § 24-2-1(b)(6) when, in its October 26 order, it restarted the 120-day dispute resolution clock from July 15, 2021 to allow it additional time to consider the Wheeling-Benwood dispute.[8]  Wheeling argued that, because the October 26 order was issued outside the Commission's authority, the dispute resolution deadline remained October 28, 2021, *i.e.*, the recalculated deadline set in the tolling order of July 22.  Wheeling also argued that the October 26 order was erroneous because it calculated the 120-day resolution deadline from the date it provided the revised CCOS (July 15) rather than the date Benwood filed its complaint (May 3).[9]

The Commission denied Wheeling's petition for reconsideration on December 1, 2021.  The Commission reasoned that, "W. Va. Code § 24-2-1(b)(6) authorizes the Commission to toll the 120-day period for resolution of rate disputes between a[n LLR] and its customer until the necessary information showing the basis of the rates, fees, and charges or other information the Commission deems necessary is filed."

---

[8] Wheeling did not object to the dispute resolution deadline set by the Commission in the October 26, 2021 order at the time of its entry.  Instead, it waited to raise the issue until after the Commission issued a final order adverse to Wheeling's interests.  While "the issue of subject matter jurisdiction can be raised at any time," *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 345, 801 S.E.2d 216, 223 (2017), that principle is not an invitation to gamesmanship.  We strongly encourage litigants to raise credible concerns with subject matter jurisdiction as early as possible in a proceeding.

[9] Wheeling also moved the Commission to stay the November 12, 2021 order pending its appeal.  In its December 1, 2021 order, the Commission denied Wheeling's motion to stay the November 12 order.

Because Wheeling had not filed the revised CCOS until July 15, the Commission concluded that § 24-2-1(b)(6) authorized it to "toll" the 120-day dispute resolution period from that date. As to its earlier calculations of the dispute resolution deadline, the Commission stated that it had not

> invoke[d] its full authority to toll the decision due date by 120 days from the date Wheeling filed its Revised [CCOS]. Instead, [it] granted Staff's request to toll the decision due date only 13 days from the then-established statutory decision due date of October 15, 2021. The Commission recognized and corrected this oversight when it issued its October 26, 2021, Order that tolled the decision due date of this dispute 120 days from July 15, 2021.

The Commission did not address Wheeling's argument that it lacked jurisdiction under § 24-2-1(b)(6) to toll the dispute resolution deadline to allow it more time to consider complex cases.

Wheeling appealed the Commission's orders of November 12 and December 1. This Court affirmed those orders in an Opinion issued on April 26, 2022. We then granted Wheeling's petition to reconsider that decision. The matter was submitted to the Court again following oral argument on January 10, 2023. This Opinion follows.

## II. STANDARD OF REVIEW

Well-established standards govern our review of the Commission's orders of November 12, 2021, and December 1, 2021. Over forty years ago, this Court held that,

In reviewing a Public Service Commission order, we will first determine whether the Commission's order, viewed in light of the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. We will examine the manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. Finally, we will determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection to the relevant public interests, both existing and foreseeable. The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors.[10]

We restated that standard more succinctly in 1993:

The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission,* 166 W.Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper.[11]

---

[10] Syl. Pt. 2, *Monongahela Power Co. v. Pub. Serv. Comm'n of W. Va.*, 166 W. Va. 423, 276 S.E.2d 179 (1981).

[11] Syl. Pt. 1, *Cent. W. Va. Refuse, Inc. v. Pub. Serv. Comm'n of W. Va.*, 190 W. Va. 416, 438 S.E.2d 596 (1993).

We are concerned in this case with (1): "whether the Commission exceeded its statutory jurisdiction and powers."[12] To resolve this dispute, we are called upon to examine the language of § 24-2-1(b)(6), raising a question of law which this Court reviews de novo.[13]

### III.  ANALYSIS

The substance of the Commission's November 12, 2021 order is not the issue in this case.  Rather, we decide whether the Commission acted within its statutory authority when it elected to start the jurisdictional, 120-day clock on the date it contends it received sufficient information from Wheeling to resolve the Benwood-Wheeling dispute—July 15, 2021.  The plain language of § 24-2-1(b)(6) controls that decision.

West Virginia Code §  24-2-1(b)(6) states that:

---

[12] *Id.*

[13] *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").  The Commission suggests that its interpretation of § 24-2-1(b)(6) is entitled to deference under Syllabus Point 1 of *Appalachian Power Co. v. State Tax Department* as a permissible construction of an ambiguous statute. *Id.*, 195 W. Va. 573, 466 S.E.2d 424 (1995).  As we conclude below, the operative language of § 24-2-1(b)(6) is plain and the Commission's position is contrary to that statute.  So, if Syllabus Point 1 of *Appalachian Power* is relevant here, it does not require this Court to afford deference to the Commission's view of § 24-2-1(b)(6) because where "the intention of the Legislature is clear, that is the end of the matter . . . ."  Syl. Pt. 3, in part, *Appalachian Power Co.*, 195 W. Va. at 573, 466 S.E.2d at 424.

(b)     The jurisdiction of the commission over political subdivisions of this state providing separate or combined water and/or sewer services and having at least 4,500 customers and annual combined gross revenues of $3 million or more that are political subdivisions of the state is limited to:

. . . .

(6)     Investigation and resolution of disputes between a political subdivision of the state providing wholesale water and/or wastewater treatment or other services, whether by contract or through a tariff, and its customer or customers, including, but not limited to, rates, fees, and charges, service areas and contested utility combinations: Provided, That any request for an investigation related to such a dispute that is based on the act or omission of the political subdivision shall be filed within 30 days of the act or omission of the political subdivision and the commission *shall resolve the dispute within 120 days of filing*. The 120-day period for resolution of the dispute may be tolled by the commission until the necessary information showing the basis of the rates, fees, and charges or other information required by the commission is filed: Provided, however, That the disputed rates, fees, and charges fixed by the political subdivision providing separate or combined water and/or sewer services shall remain in full force and effect until set aside, altered or, amended by the commission in an order to be followed in the future.[14]

Wheeling posits that the italicized language starts the 120-day clock on the date the customer of an LRR files a complaint under § 24-2-1(b)(6).  In this case, that is May 3, 2021.  According to the Commission, the "'may be tolled' proviso of [§ 24-2-1(b)(6)] means that if [it] does not have all the necessary information before it at [filing] then [it] has authority to determine that the 120-day review period begins on the date the

---

[14] W. Va. Code § 24-2-1(b)(6) (emphases added).

10

utility files the necessary information."  In other words, Wheeling relies on the italicized language above, while the Commission's argument hangs on the underlined language.

"Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use."[15] Likewise, "'[i]n the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meaning.'"[16] Those principles direct us to the common, ordinary meaning of the verb "toll":  "to stop the running of; to abate."[17] Similarly, a "tolling statute" is defined as "[a] law that *interrupts* the running of a statute of limitations in certain situations . . . ."[18] Courts have recognized that tolling "operates to suspend or interrupt [a statute of limitation's] running while certain activity

---

[15] Syl. Pt. 4, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

[16] Syl. Pt. 7, *Wheeling Park Comm'n v. Dattoli*, 237 W. Va. 275, 787 S.E.2d 546 (2016) (quoting Syl. Pt. 1, *Tug Valley Recovery Ctr., Inc. v. Mingo Cnty. Comm'n*, 164 W. Va. 94, 261 S.E.2d 165 (1979)); *see also* Syl. Pt. 4, *W. Va. Consol. Pub. Ret. Bd. v. Weaver*, 222 W. Va. 668, 671 S.E.2d 673 (2008) ("'In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used.' Syllabus point 1, *Miners in General Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982).").

[17] *Toll*, BLACK'S LAW DICTIONARY 1791 (11th ed. 2019).

[18] *Tolling statute*, *id*. (emphasis added).

11

takes place."[19]  And in the context of equitable tolling, the Supreme Court of the United States has commented that "[p]rinciples of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period *whatever time ran before the clock was stopped*."[20]  While § 24-2-1(b)(6) is not a statute of limitations per se, the operative concept of the definition of a "tolling statute" is readily transferable to § 24-2-1(b)(6):  the Commission may suspend or interrupt the running of the 120-day clock once it has begun, but it may not postpone its commencement.

The Commission asserts that this phrase—"[t]he 120-day period for resolution of the dispute may be tolled by the commission"—empowers it to determine when the 120-day jurisdictional clock begins to run.  But the language that precedes that phrase— "shall" and "of filing"—belies the Commission's argument.  Regarding "shall," "[i]t is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."[21]  In the context of § 24-2-1(b)(6), the combination of "shall" and "of filing"

---

[19] *Flannery v. Singer Asset Fin. Co., LLC*, 94 A.3d 553, 569 (Conn. 2014) (citations omitted).

[20] *United States v. Ibarra*, 502 U.S. 1, 4 n.2 (1991) (emphasis added) (citations omitted).

[21] Syl. Pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982).  We see no indication in § 24-2-1(b)(6) that the Legislature intended "shall" to be anything less than mandatory.

communicates the Legislature's clear intent to start the 120-day clock to resolve disputes under § 24-2-1(b)(6) when an LLR customer files its complaint. Had the Legislature intended to empower the Commission to delay the commencement of the 120-day clock as it did in this case, the Legislature would have said that the Commission must resolve a request for investigation filed under § 24-2-1(b)(6) within 120 days of the filing of "information showing the basis of the rates, fees, and charges or other information required by the commission with the Commission." In view of the plain language of the statute, we now hold that the 120-day dispute resolution period set forth in West Virginia Code § 24-2-1(b)(6) (2021) commences on the date a request for investigation is filed with the Public Service Commission pursuant to that statute.[22]

Applying that holding to the facts of this case, we conclude that the Commission erroneously commenced the 120-day dispute resolution period on July 15, 2021, rather than the date Benwood filed its complaint, May 3, 2021. Due to that error, the Commission erroneously calculated the deadline to resolve the Benwood-Wheeling dispute as November 12, 2021. Section 24-2-1(b)(6) required the Commission to resolve the

---

[22] We note the Commission's argument that the Legislature cannot have intended the 120-day clock to start before the Commission has received the information necessary to resolve a dispute filed under § 24-2-1(b)(6). According to the Commission, that reading of § 24-2-1(b)(6) puts the LLR in "control over when it provides the Commission with necessary information." But § 24-2-1(b)(6) empowers the *Commission* to toll the running of the 120-day period once it commences. Practically, the Commission imposed deadlines on Wheeling to respond to the Commission's information requests which, presumably, the Commission would have enforced had Wheeling failed to supply information requested by the Commission on time.

13

Benwood-Wheeling dispute on or before October 28, 2021, that is May 3, 2021 + 120 days + 45 days (June 2 order) + 13 days (July 22 order).[23] The final order in this case (as well as the order denying Wheeling's motion to reconsider) was entered after October 28, 2021. Because the Commission did not have jurisdiction over the Benwood-Wheeling dispute after October 28, 2021, its November 12 and December 1, 2021 orders are void and we now vacate them.[24]

## IV. CONCLUSION

For the reasons discussed above, the Commission lacked jurisdiction over this matter when it entered its orders of November 12 and December 1, 2021. Accordingly, we now vacate those orders.

Vacated.

---

[23] As noted in section I., in its June 2, 2021, order, the Commission directed Wheeling to file the requested information within 30 days of the order. Yet, the Commission tolled the 120-day dispute resolution period by 45 days, without explanation. The July 22 order is similarly flawed. There, the Commission tolled the 120-day period by 13 days to "put staff in the posture that [they] would have been in on July 2, 2021, but for the flawed [CCOS] filed by Wheeling," rather than to allow Wheeling to file additional information requested by the Commission. That said, we utilize 45 days and 13 days to calculate the various dispute resolution dates for the sake of simplicity and because their use does not affect the outcome of Wheeling's appeal.

[24] Because we have vacated the Commission's orders of November 12, 2021 and December 1, 2021, it is not necessary to address Wheeling's challenge to the Commission's denial of its motion to stay those orders.