IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

**FILED**

**June 1, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 17-0004

STATE OF WEST VIRGINIA EX REL.
UNIVERSAL UNDERWRITERS INSURANCE COMPANY,
AND ZURICH AMERICAN INSURANCE COMPANY,
Petitioners

v.

THE HONORABLE PATRICK N. WILSON,
JUDGE OF THE CIRCUIT COURT OF MARION COUNTY,
WEST VIRGINIA, CHRISTINA M. VARVEL, ADMINISTRATRIX
OF THE ESTATE OF DAVID RALPH ALLEN, DECEASED,
SALVATORE CAVA, DAN'S CAR WORLD, LLC,
DAN CAVA'S TOYOTA WORLD, AND DANIEL A. CAVA,
Respondents

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED AS MOULDED

Submitted: May 3, 2017
Filed: June 1, 2017

Arie M. Spitz, Esq.
Jill C. Rice, Esq.
Dinsmore & Shohl LLP
Charleston, West Virginia
Counsel for Petitioners
Universal Underwriters Insurance Co.,

Gregory H. Schillace, Esq.
Schillace Law Office
Clarksburg, West Virginia
Counsel for Respondents
Salvatore Cava, Dan's Car
World, LLC, Dan Cava's

and Zurich American Insurance Co.

Toyota World, and
Daniel A. Cava

Jeffrey M. Wakefield, Esq.
Flaherty Sensabaugh Bonasso PLLC
Charleston, West Virginia
Attorney for Amicus Curiae
West Virginia Insurance Federation

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "'A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W.Va. Code 53-1-1.' Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977)." Syl. Pt. 1, *State ex rel. York v. W.Va. Office of Disciplinary Counsel*, 231 W.Va. 183, 744 S.E.2d 293 (2013).

2.     "This Court, on its own motion, will take notice of lack of jurisdiction at any time or at any stage of the litigation pending therein." Syl. Pt. 2, *In re Boggs' Estate,* 135 W.Va. 288, 63 S.E.2d 497 (1951).

3.     Subject matter jurisdiction does not exist over claims that are not ripe for adjudication.

i

WORKMAN, Justice:

The petitioners herein and defendants below, Universal Underwriters Insurance Company, and Zurich American Insurance Company (hereinafter collectively "Zurich"),[1] invoke this Court's original jurisdiction seeking a writ of prohibition to prevent enforcement of the December 8, 2016, order entered by the Honorable Patrick N. Wilson, Judge of the Circuit Court of Marion County, West Virginia. In that order, the circuit court denied Zurich's motion to dismiss the cross-claims of the respondents herein and defendants below, Salvatore Cava, Daniel A. Cava, and Dan's Car World, LLC, d/b/a Dan Cava's Toyota World (hereinafter collectively the "Cava defendants" and/or individually). After review of the appendix record and briefs of the parties, contemplation of the matters raised during oral arguments, and full consideration of the applicable law, we find the Cava defendants' cross-claims against Zurich are not ripe for adjudication. Thus, the circuit court lacked subject matter jurisdiction. Accordingly, we grant a writ of prohibition, as moulded.[2]

---

[1] Universal Underwriters Insurance Company is a subsidiary of Zurich American Insurance Company.

[2] We wish to acknowledge the amicus curiae brief filed by the West Virginia Insurance Federation in support of the Petition for Writ of Prohibition. We value its participation in this case.

1

## I. FACTUAL AND PROCEDURAL HISTORY

A. The Underlying Litigation

On May 30, 2014, nineteen-year-old Salvatore Cava was driving a 2014 Toyota Rav4 sports utility vehicle when he was involved in a motor vehicle accident with sixty-six-year-old David R. Allen, who was driving a motorcycle. Mr. Allen suffered catastrophic injuries in the accident and died nine days later at Ruby Memorial Hospital in Morgantown, West Virginia.

Salvatore Cava, a college student residing in his parents' home, is the son of Daniel A. Cava, member of Dan's Car World, LLC, d/b/a Dan Cava's Toyota World ("Dan's Car World"). This business owned the Rav4. Salvatore Cava was an employee of Dan's Car World, although he was not engaged in any activity on behalf of the business at the time of the collision.[3] It is undisputed that Salvatore Cava was driving the Rav4 with permission from his father at the time of the accident. Dan's Car World purchased the insurance policy at issue from Zurich. Part 500 of this policy, titled "garage coverage," provides up to $300,000 in liability coverage. Part 980 of this policy, titled "commercial umbrella coverage," provides up to $5,000,000 in liability coverage.

---

[3] In June 2015, Salvatore Cava testified at deposition that he began working for Dan's Car World in the summer of 2012. He worked mostly during the summer months and performed various duties such as washing and valeting cars. He could not recall, however, if he worked for his father's business during the summer of 2014; he did recall working at a local restaurant that summer.

In December 2014, the plaintiff below, Christina M. Varvel, Administratrix of Mr. Allen's estate, filed suit against Salvatore Cava and Dan's Car World with respect to the vehicular accident. She alleged that Salvatore Cava was an employee, agent, and/or servant of Dan's Car World. The plaintiff also asserted a declaratory judgment action against Zurich to determine the amount of insurance coverage available.[4]

Zurich determined that the complaint triggered its duty to defend under the policy; it retained counsel for Salvatore Cava and separate counsel for Dan's Car World. Zurich also retained counsel to defend itself in the declaratory judgment action brought by the plaintiff. Zurich admitted that the garage policy provides liability coverage to Salvatore Cava with respect to the plaintiff's claims. However, Zurich maintained that the umbrella policy did not cover the plaintiff's claims.[5] Zurich offered the plaintiff $300,000

---

[4] *See* Syl. Pt. 3, *Christian v. Sizemore*, 181 W.Va. 628, 383 S.E.2d 810 (1989) ("An injured plaintiff may bring a declaratory judgment action against the defendant's insurance carrier to determine if there is policy coverage before obtaining a judgment against the defendant in the personal injury action where the defendant's insurer has denied coverage."). Justice Miller, writing for the majority in *Christian*, recognized that a declaratory judgment action "provides a prompt means of resolving policy coverage disputes so that the parties may know in advance of the personal injury trial whether coverage exists. This facilitates the possibility of settlements and avoids potential future litigation as to whether the insurer was acting improperly in denying coverage." *Id*. at 632, 383 S.E.2d at 814.

[5] Zurich's position remains that there is no coverage available under the commercial umbrella policy because at the time of the vehicle accident Salvatore Cava was not operating the Rav4 for business purposes, nor was he an employee of Dan's Car World.

3

to settle this matter, and she rejected the offer. The plaintiff contends the umbrella policy provides additional liability coverage with respect to this lawsuit.

In January 2016, the plaintiff filed a motion for leave to file her first amended complaint, which the circuit court granted in March 2016. In her amended complaint, the plaintiff added Daniel A. Cava as an individual defendant and asserted negligent entrustment and family use claims against him. Defense counsel for Daniel A. Cava, retained by Zurich, answered the amended complaint on his behalf and denied all claims.

B. The Cava Defendants' Cross-claims

In March 2016, the Cava defendants, by personal counsel, mounted a sweeping attack on Zurich's defense strategy or alleged lack thereof, and filed individual cross-claims against Zurich.[6] The Cava defendants asserted two counts in the cross-claims: in Count I, they alleged violations of the Unfair Trade Practices Act ("UTPA"), West Virginia Code § 33-11-4 (2011),[7] and breach of contract; in Count II, they alleged

_____

[6] The Cava defendants did not file claims against counsel Zurich retained to defend them.

[7] The cross-claims assert violations of West Virginia Code §§ 33-11-4(9)(a), (b), (c), and (d), which provide:

> (9) *Unfair claim settlement practices.* -- No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

(continued . . .)

4

breach of the "common law duty to deal fairly and in good faith" in the investigation, defense and indemnification of this action. The Cava defendants asserted, generally, that Zurich placed its interest above theirs during the course of this litigation, and acted in bad faith by failing to investigate the matter properly and settle the case. They accused Zurich of engaging in intentional, wrongful litigation conduct.

Specifically, Salvatore Cava asserted that he has suffered, and continues to suffer, "emotional and mental distress," some of which has "resulted in physical consequences" arising from the vehicle collision, the death of Mr. Allen, the police investigation, the allegations that the collision was his fault, "as well as, the institution of this civil action[.]" He further stated his "emotional stress and mental anguish" have been and continue "to be increased and compounded by the wrongful, reckless and intentional conduct" of Zurich. Salvatore Cava noted that prior to the institution of the plaintiff's civil action, he made a demand on behalf of Zurich "that all claims of the plaintiff be immediately resolved within the policy limit of all policies[.]"

---

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information[.]

Daniel A. Cava asserted he advised a representative of Zurich, prior to the motor vehicle accident, to make sure Salvatore Cava was an insured on all policies issued by Zurich. He claimed to have "endured additional mental and emotional strain" as a result of the mental and emotional strain of Salvatore Cava. He asserted Zurich engaged in wrongful litigation conduct, such as attempting to obtain a court order to take his deposition, which the circuit court denied,[8] and not objecting to the plaintiff's motion to amend her complaint to add Daniel A. Cava as a defendant.

Dan's Car World asserted that Zurich engaged in wrongful litigation conduct by "falsely asserting" that Salvatore Cava was not an employee of the business. Dan's Car World demanded the same damages as Salvatore Cava and Daniel A. Cava, specifically:

> (a) That it have judgment against [Zurich] in the amount of any judgment awarded to the plaintiff in this action;
> (b) That it have judgment against [Zurich] for compensatory damages in an amount to be determined at the trial of this action, said damages to include, but not be limited

---

[8] During the course of discovery in the declaratory judgment action, Zurich deposed Tiffany Moine, Controller for Dan's Car World, as its Rule 30(b)(7) representative. However, Zurich claimed that Ms. Moine was unable to fully testify to the knowledge of Dan's Car World with respect to subject matters contained in the amended notice of deposition, and filed a motion to compel Dan's Car World to produce Daniel A. Cava as its representative for deposition. After considering the arguments of the parties on this matter at hearing, the circuit court denied Zurich's motion.

to, the cost and reasonable attorneys' fees . . . in the defense of this action;

(c) That [it] be awarded its costs herein expended, including reasonable attorneys' fees in prosecution of this civil action, all in accordance with West Virginia law;

(d) That [it] have judgment against [Zurich] for punitive damages in an amount to be determined to be fair, equitable and proper by the jury; and

(e) That [it] have such other relief, both general and special, as to the Court appears equitable and proper.

Zurich filed a motion to dismiss the Cava defendants' cross-claims under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. It argued the Cava defendants failed to state claims for which relief can be granted because their claims "are either barred by the litigation privilege, do not seek compensable damages, or have not yet accrued." Zurich stated it provided defense for the lawsuit and continues to defend; moreover, its duty to indemnify has not yet ripened. Zurich denied engaging in bad faith simply because it defended its rights in a declaratory judgment action initiated by the plaintiff. It also stated that the Cava defendants cannot recover damages due to the stress of litigation.

The Cava defendants filed a consolidated response opposing Zurich's motion to dismiss, and stated they asserted recognized first-party bad faith causes of action against Zurich.[9] The circuit court agreed, and denied Zurich's motion to dismiss

---

[9] This Court has explained:

(continued . . .)

7

the Cava defendants' cross-claims.[10] With scant analysis, the circuit court determined that

"the Cava defendants assert[ed] recognized causes of action" against Zurich, their

insurer.

---

> The terms "first-party" and "third-party" have distinctively different meanings in the context of bad faith settlement actions against insurers. For definitional purposes, a first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured. A third-party bad faith action is one that is brought against an insurer by a plaintiff who prevailed in a separate action against an insured tortfeasor.

*State ex rel. Allstate Ins. v. Gaughan*, 203 W.Va. 358, 369, 508 S.E.2d 75, 86 (1998) (footnotes omitted). The Cava defendants' cross-claims are first-party bad faith actions because they are suing their own insurer, Zurich. This Court has recognized two types of first-party bad faith claims:

> One such action may arise when the insurer fails to use good faith in settling a claim by someone the insured harmed or injured. . . . However, the second type of first-party bad faith action against an insurer concerns a claim brought by the insured against the insurer, e.g., house burned down [and the insurer has refused to settle the claim].

*Id.* at 370 n.17, 508 S.E.2d at 87 n.17.

[10] The circuit court also granted Zurich's motion to bifurcate the cross-claims from the claims asserted by the plaintiff below with respect to the vehicle collision, and took under advisement Zurich's motion to stay and for protective order. This Court has held that a circuit court has discretion when determining whether to bifurcate and stay proceedings in a first-party bad faith action against an insurer. *See* Syl. Pt. 2, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998) ("In a first-party bad faith action against an insurer, bifurcation and stay of the bad faith claim from the underlying action are not mandatory. Under Rule 42(c) of the West Virginia Rules of Civil Procedure a trial (continued . . .)

8

## II. STANDARD FOR ISSUANCE OF WRIT

Zurich filed a petition for a writ of prohibition with this Court. "Remedies of this nature, being extraordinary in nature, are generally reserved for really extraordinary causes." *State ex rel. Brooks v. Zakaib*, 214 W.Va. 253, 259, 588 S.E.2d 418, 424 (2003) (internal quotations and citation omitted). This Court has held that:

> "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W.Va. Code 53-1-1." Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977).

Syl. Pt. 1, *State ex rel. York v. W.Va. Office of Disciplinary Counsel*, 231 W.Va. 183, 744 S.E.2d 293 (2013). As jurisdictional issues are questions of law, our review is de novo.

Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

---

court, in furtherance of convenience, economy, or to avoid prejudice, may bifurcate and stay a first-party bad faith cause of action against an insurer.").

In *Light*, the plaintiffs brought the second type of first-party bad faith action identified in *Gaughan*, namely, they filed suit against their insurer to recover their own damages. Mr. and Mrs. Light were in a motor vehicle accident with another driver and Mrs. Light sustained serious injuries. The Lights accepted the full policy limits of $100,000 from the other driver's insurance company. Thereafter, the Lights submitted a claim to their insurer to collect from their underinsured motorist coverage for Mrs. Light's damages exceeding the amount recovered from the other driver's policy. The insurer refused to pay the underinsured motorist coverage. *Id*. at 28, 506 S.E.2d at 65. Thereafter, the Lights filed a complaint against their insured alleging breach of contract, and unfair settlement practices under the UTPA. Critically, the Lights did not file suit against the other driver and the insurer was the only named defendant. *Id*. at 29, 506 S.E.2d at 66.

## III. DISCUSSION

Zurich seeks a writ of prohibition to prevent the circuit court from enforcing the order denying its motion to dismiss the cross-claims asserted by the Cava defendants on the grounds that this ruling is clearly erroneous as a matter of law. Zurich asserts its duty to indemnify the Cava defendants has not yet been triggered, so they cannot bring claims for common law and statutory bad faith breach of this duty.[11] Moreover, because an excess judgment has not been entered against the Cava defendants, they have suffered no damages. Thus, Zurich contends the cross-claims are premature. Zurich further posits that if this Court does not intervene, it will not be able to properly defend itself in the declaratory judgment action because of the ongoing threat that any action it takes will be used as grounds to further the Cava defendants' cross-claims for "wrongful litigation conduct."

The Cava defendants respond that Zurich's petition is nothing more than an attempt at an interlocutory appeal, and that Zurich's claims do not warrant extraordinary relief. They argue the cross-claims are recognized first-party claims against their insurer for breach of the common law duty to provide an effective defense, breach of contract, and violations of the UTPA. The Cava defendants rely heavily on *State ex rel. State Auto Property Ins. Co. v. Stucky*, No. 15-1178, 2016 WL 3410352, (W.Va. June 14, 2016)

---

[11] Zurich relies on *Noland v. Virginia Insurance Reciprocal*, 224 W.Va. 372, 686 S.E.2d 23 (2009). However, *Noland* is distinguishable; in that case, this Court addressed a first-party bad faith claim based on an insurer's *refusal* to defend. In the instant case, Zurich did not refuse to defend the Cava defendants.

10

(memorandum decision). In *State Auto*, this Court denied an insurer's petition for writ of prohibition and permitted a first-party common law bad faith claim to proceed in the absence of excess judgment, where the insured alleged insurer failed to use good faith in settling the claim. *Id*. at *4. *State Auto* is distinguishable, however, because our review in that case was limited to whether the circuit court had sufficiently appraised the third-party complaint under West Virginia Rule of Civil Procedure 12(b)(6). The parties did not raise the issue of ripeness because the declaratory judgment action in *State Auto* was resolved, and resulted in an agreement as to all coverage issues. Thus, the insured's alleged economic damages would have accrued in *State Auto*. In the instant case, the plaintiff's declaratory judgment action concerning the umbrella coverage remains in litigation.

Emphasizing that Zurich's actions will force them to expend their own money to obtain a release of liability from the plaintiff, the Cava defendants state this is not the situation they anticipated when they purchased insurance coverage. The Cava defendants filed a supplemental appendix shortly before argument in this matter in support of their claim that Zurich only recently began actively defending them. For example, counsel retained by Zurich to represent Salvatore Cava served his notice to

11

inspect the Rav4 and motorcycle in March 2017, more than two years after the plaintiff filed her complaint.[12]

Zurich counters that the issue of whether or not defense counsel hired by Zurich have adequately represented the Cava defendants is a question that is "in flux" because the representation is ongoing. Zurich urges the Court to explicitly reject the new cause of action proposed by the Cava defendants and hold that an insurer cannot be pulled into litigation to defend the actions of the defense counsel it retained to protect the insured, while the defense is ongoing. Zurich claims this cause of action is nonsensical because it has no right to control the litigation strategy of counsel it retained to defend the Cava defendants. *See* Syl. Pt. 8, *Barefield v. DPIC Cos., Inc.*, 215 W.Va. 544, 600 S.E.2d 256 (2004) ("Because a defense attorney is ethically obligated to maintain an independence of professional judgment in the defense of a client/insured, an insurance company possesses no right to control the methods or means chosen by the attorney to defend the insured.").[13]

---

[12] The plaintiff made a demand upon Zurich to preserve the Rav4 for purposes of this litigation, and the vehicle remains unrepaired in storage to this date.

[13] *See also* Syl. Pt. 10, *Barefield*, 215 W.Va. at 547, 600 S.E.2d at 259 ("An insurance company cannot be held liable under the West Virginia Unfair Trade Practices Act, *W.Va. Code,* 33-11-1 to -10, for the actions of a defense attorney retained to defend an insured, when the defense attorney's strategy and tactics are a result of the attorney's independent, professional discretion with regard to the representation of the client-insured, and are not otherwise relied upon or ratified by the insurance company in a manner contrary to the Act.").

(continued . . .)

We begin our analysis by recognizing that "[u]nder the terms of most liability insurance policies, the insured agrees to permit the insurer to choose counsel to defend the insured against claims by third parties."[14] *Allstate Ins. Co. v. Campbell*, 639 A.2d 652, 658 (Md. 1994). Generally, the insurer and insured have compatible interests and goals in responding to a tort claim. However, their interests may diverge at times, creating a potential or actual conflict of interest. This case presents the common situation where the conflict of interest between Zurich and the Cava defendants concerns the amount of coverage available under the policy. On this issue, the Cava defendants' interests are more in line with the plaintiff's interest, as they want to establish that the umbrella policy covers her claims against Salvatore Cava. This evident conflict of interest made it necessary for Zurich to retain independent counsel for the Cava defendants and itself.

A prerequisite for any first-party bad faith action is an underlying claim for coverage or benefits or an action for damages which the insured alleges was handled in bad faith by its insurer. In the instant case, the Cava defendants, frustrated by the fact Zurich has not increased its settlement offer to the plaintiff above the $300,000 limit of the garage liability policy during the pendency of the declaratory judgment action, filed their cross-claims against Zurich for intentional, willful, and malicious wrongful

---

[14] The appendix record before this Court does not contain the insurance policy at issue in this case.

13

litigation conduct. Beyond the hyperbole, however, their complaints amount to no more than attacks on Zurich for defending itself in the declaratory judgment action and second-guessing of strategic decisions made by the defense counsel retained by Zurich. But, the Cava defendants offer no authority to support their proposition that an insured has a bad faith cause of action against his or her insurer when the insurer has not declined to defend the insured, and is *continuing* to defend the insured with independent counsel, while simultaneously defending its own declaratory judgment action. The Cava defendants' allegations are not that Zurich refused a defense, but that it is *currently* consciously undermining their defense. In our view, these facts lead to the unavoidable conclusion that their cross-claims are premature, and, therefore, not ripe for adjudication.

The ripeness doctrine "seeks to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Paraquad v. St. Louis Housing Auth.,* 259 F.3d 956, 958 (8th Cir. 2001) (internal quotations and citation omitted).[15] "Questions that may never arise or are purely advisory

---

[15] The doctrine of ripeness requires: "(1) a sufficiently concrete case or controversy within the meaning of Article III of the Constitution, and also, (2) prudential considerations must justify the present exercise of judicial power." *Gopher Oil Co. v. Bunker,* 84 F.3d 1047, 1050 (8th Cir. 1996) (citations and quotations omitted). "'A live dispute must exist between the parties at the time of the court's hearing.'" *Id.* (quoting *Caldwell v. Gurley Ref. Co.,* 755 F.2d 645, 649 (8th Cir. 1985)). However, "a plaintiff does not have to 'await consummation of threatened injury' before bringing a declaratory judgment action." *S.D. Mining Ass'n v. Lawrence Cty.,* 155 F.3d 1005, 1008 (8th Cir. 1998) (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)). Instead, an action is ripe for adjudication if the plaintiff faces injury that "is certainly impending." *Babbitt,* 442 U.S. at 298.
(continued . . .)

14

or hypothetical do not establish a justiciable controversy. Because an unripe claim is not justiciable, the circuit court has no subject matter jurisdiction over it." *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 270 (Ky. Ct. App. 2005) (footnotes omitted);[16] *see generally* 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3529 (3d ed. 2008) (recognizing central concepts of justiciability often are elaborated into specific categories including advisory opinions, standing, ripeness, mootness, and political questions).

It is well established that the issue of subject matter jurisdiction can be raised at any time, even *sua sponte* by this Court. "This Court, on its own motion, will take notice of lack of jurisdiction at any time or at any stage of the litigation pending therein." Syl. Pt. 2, *In re Boggs' Estate,* 135 W.Va. 288, 63 S.E.2d 497 (1951). Furthermore, "[t]he urgency of addressing problems regarding subject-matter jurisdiction cannot be understated because any decree made by a court lacking jurisdiction is void." *State ex rel. TermNet Merch. Servs., Inc. v. Jordan*, 217 W.Va. 696, 700, 619 S.E.2d 209, 213 (2005); *see also* Franklin D. Cleckley, Robin Jean Davis, and Louis J. Palmer, Jr.,

---

[16] *Doe* primarily addressed ripeness as it relates to legal malpractice. At issue in that case was when the damages for legal malpractice become fixed and non-speculative. The court found the plaintiffs' claims were not ripe for adjudication because they filed their complaints before the asserted causes of action accrued, reasoning that "whether the attorney's negligence has caused any injury or damages necessarily is contingent on the final outcome of the underlying case[.]" 173 S.W.3d at 271.

15

*Litigation Handbook on W.Va. Rules of Civ. Pro.*, § 12(b)(1), at 325-26 (4th ed. 2012) ("Any judgment or decree rendered without such jurisdiction is utterly void.").

"Like other challenges to a court's subject matter jurisdiction, motions raising the ripeness issue are treated as brought under Rule 12(b)(1) even if improperly identified by the moving party as brought under Rule 12(b)(6)."[17] *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). As explained below, it is apparent from the appendix record and representations during oral arguments that the Cava defendants' cross-claims are not ripe for adjudication.

---

[17] This Court has previously explained that

> [b]ecause the West Virginia Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, we often refer to interpretations of the Federal Rules when discussing our own rules. *See Painter v. Peavy,* 192 W.Va. 189, 192 n.6, 451 S.E.2d 755, 758 n.6 (1994) ("Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases . . . in determining the meaning and scope of our rules."). *See, e.g., State v. Sutphin,* 195 W.Va. 551, 563, 466 S.E.2d 402, 414 (1995) ("The West Virginia Rules of Evidence are patterned upon the Federal Rules of Evidence, . . . and we have repeatedly recognized that when codified procedural rules or rules of evidence of West Virginia are patterned after the corresponding federal rules, federal decisions interpreting those rules are persuasive guides in the interpretation of our rules." (citations omitted)).

*Keplinger v. Virginia Elec. & Power Co.,* 208 W.Va. 11, 20-21 n.13, 537 S.E.2d 632, 641-42 n.13 (2000).

16

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300 (1998) (internal quotation marks and citations omitted). As this Court recognized in *State Farm Mutual Automobile Insurance Co. v. Schatken*, 230 W.Va. 201, 737 S.E.2d 229 (2012),

> courts will not . . . adjudicate rights which are merely contingent or dependent upon contingent events, as distinguished from actual controversies. Likewise, courts [will not] resolve mere academic disputes or moot questions or render mere advisory opinions which are unrelated to actual controversies.
>
> Indeed, a matter must be ripe for consideration before the court may review it. Courts must be cautious not to issue advisory opinions.

*Id*. at 210, 737 S.E.2d at 238 (quoting *Zaleski v. West Virginia Mut. Ins. Co.,* 224 W.Va. 544, 552, 687 S.E.2d 123, 131 (2009) (quotation marks omitted)).

We hereby hold that subject matter jurisdiction does not exist over claims that are not ripe for adjudication. *See Dakota, Minn. & E. R.R. Corp. v. South Dakota,* 362 F.3d 512, 520 (8th Cir. 2004) ("The issue of ripeness . . . is one of subject matter jurisdiction."); *City of Chico*, 880 F.2d at 201 ("Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction[.]").

The gravamen of the Cava defendants' cross-claims is that they should not have to endure a trial for which the lawyers retained to represent them by Zurich are

17

"unprepared" which *may* cause them to suffer a *potential* verdict in excess of the *to-be-determined* policy limit. However, the issue of whether the Cava defendants will suffer *any* of their alleged economic damages[18] is contingent on future events: the resolution of the plaintiff's claims against the Cava defendants, and her declaratory judgment action against Zurich. As these claims are pending before the circuit court, certain damages are not impending and the issue is not ripe for adjudication.

For this reason, relief in this matter lies in a writ of "prohibition . . . [as its purpose is] to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers[.]" Syl. Pt. 1, in part, *Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d 370 (1953). Accordingly, we grant the writ as moulded, and direct the circuit court to dismiss the Cava defendants' cross-claims without prejudice for want of subject matter jurisdiction.[19]

---

[18] Salvatore Cava and Daniel A. Cava's claims related to litigation-induced emotional distress are not ordinarily recoverable as element of damages. *See generally Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 79 (1st Cir. 2001) (recognizing considerable weight of authority holds that litigation-induced stress is not ordinarily recoverable as element of damages). Sound policy reasons support this rationale; an insurer should have the right to defend itself in a plaintiff's declaratory judgment action without risking exposure merely because the strain inherent in litigation discomfits its insured.

[19] We therefore do not reach the issue of whether Zurich's litigation conduct is privileged.

## IV. CONCLUSION

Inasmuch as the circuit court lacked subject matter jurisdiction, the December 8, 2016, order that denied Zurich's motion to dismiss the cross-claims asserted by Salvatore Cava, Daniel A. Cava, and Dan's Car World is void and unenforceable. Accordingly, this Court grants the writ of prohibition sought by Zurich, as moulded. We order the circuit court to dismiss those cross-claims without prejudice.[20]

Writ granted as moulded.

---

[20] To the extent Dan's Car World asserts it brought a first-party property damage claim against Zurich for the Rav4, we note it devotes only one sentence to this issue in its response brief. This Court is not responsible for searching the appendix record for details that may be favorable to a party's position, and, therefore, we will not speculate or guess about whether Dan's Car World pled a cognizable first-party property damage claim. Indeed, we find that, by failing to adequately set out an argument pertaining to this issue, Dan's Car World has waived it. This Court has previously adhered to the rule that, "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered[.]" *State v. LaRock,* 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996).