**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **A.N. and I.N.**

**No. 25-402** (Ohio County CC-35-2024-JA-65 and CC-35-2025-JA-16)


**MEMORANDUM DECISION**


Petitioner Mother J.N.[1] appeals the Circuit Court of Ohio County's May 20, 2025, order terminating her parental rights to A.N. and I.N.,[2] arguing that the circuit court erred in terminating her improvement period and her parental rights. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision vacating the circuit court's October 30, 2024, adjudicatory order; affirming, in part, and vacating, in part, its May 20, 2025, dispositional order; and remanding for further proceedings is appropriate, in accordance with the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure.

The petitioner has been the subject of three abuse and neglect petitions since 2019. In the first case, the allegations against the petitioner concerned her three older children, who are not at issue in this appeal, and included domestic violence, substance abuse, criminal activity, untreated mental health conditions, and failure to protect. The petitioner successfully completed a preadjudicatory improvement period and regained custody of the children. Then, in 2023, the DHS filed another abuse and neglect petition against the petitioner based on similar allegations involving the older children, including substance abuse; physical abuse; and exposure of those children to S.N.,[3] who the DHS had deemed an inappropriate person due to his history of domestic violence and substance abuse. In the 2023 case, the children reported in their forensic interviews that the petitioner hid food from them; kicked one child in the ribs to the extent that he or she could not breathe; hit a child with a spoon, leaving bruises; and threw a glass bowl at a child, requiring stitches. Although the DHS did not name S.N. as a respondent in the 2023 case, all three children reported witnessing him abuse drugs. The petitioner admitted to the allegations, and the circuit

---

[1] The petitioner appears by counsel Tyler L. Cline, who filed the brief in accordance with Rule 10(c)(10)(b) of the West Virginia Rules of Appellate Procedure. The petitioner's counsel also filed a motion requesting leave for the petitioner to file a self-represented supplemental brief, which this Court granted. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Counsel Joseph J. Moses appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] S.N. is the father of A.N. and I.N. He is not the biological father of the petitioner's older children.

1

court adjudicated her as an abusing and neglecting parent. Following her adjudication, the petitioner became pregnant with A.N. and moved to Ohio to live with S.N. and his family. The circuit court terminated her parental rights to the older children in November 2023 after she stopped participating in the case and failed to appear for the dispositional hearing.

In January 2024, the petitioner gave birth to A.N. while living in Ohio. A.N. was born drug-affected, and the petitioner tested positive for cocaine and buprenorphine. As a result, Child Protective Services ("CPS") in Ohio opened a case against the petitioner and S.N. and required them to submit for drug tests. On February 20, 2024, after testing positive for cocaine multiple times, Ohio CPS workers permitted the parents to retain custody of A.N. if they continued living with the paternal grandparents. Despite Ohio CPS's instructions, the parents moved back to West Virginia with A.N., although the exact time is unclear from the appendix record. Subsequently, the DHS received a referral about the family and, on July 10, 2024, filed a petition commencing the proceedings that are the subject of this appeal. In the petition, the DHS alleged that the petitioner had uncontrolled anger and mental health issues; left A.N. with a caregiver whose home was in a deplorable condition; abused substances to the extent that it impaired her judgment and ability to properly parent; and had a prior involuntary termination of her parental rights. In September 2024, the DHS filed an amended petition adding details of the Ohio CPS case, noting that the parents were not honest with the Ohio CPS workers and failed to disclose the petitioner's prior involvement with West Virginia CPS. The amended petition also outlined S.N.'s criminal history, which included convictions for domestic battery in 2016 and burglary and malicious wounding in 2018.

At an adjudicatory hearing in October 2024, the petitioner admitted that her parental rights were involuntarily terminated in November 2023; that she was pregnant with A.N. at the time her parental rights were terminated; that she engaged in substance abuse that impaired her judgment and ability to properly parent; and that she remained in a relationship with S.N. The circuit court adjudicated her as an abusing and neglecting parent. Following the hearing, the petitioner filed a motion for a post-adjudicatory improvement period. At a hearing on her motion in December 2024, the petitioner presented evidence of her active participation in addiction counseling, negative drug screens, and appropriate visits with A.N. However, the court also heard testimony that the petitioner missed multiple screens in October and November 2024 without a justification and failed to disclose to her addiction counselor that she abused cocaine while pregnant with A.N. or that her parental rights were previously terminated, in part, for physically abusing her older children. Further, during the petitioner's testimony about the 2023 abuse and neglect case, she denied the children's reports of physical abuse but admitted to yelling and "starting to smack them on their butts." She also claimed that she missed the dispositional hearing because she "had the wrong date." The court took the matter under advisement, and on January 29, 2025, entered an order granting the petitioner a post-adjudicatory improvement period, finding that her "actions and efforts since the filing of the Petition" showed that she was "likely to fully participate in the improvement period."

Meanwhile, unbeknownst to the DHS, the guardian, or the circuit court, the petitioner became pregnant, and in February 2025, she gave birth to I.N. Two days after I.N.'s birth, the DHS filed a second amended petition alleging that the petitioner abused and neglected I.N. because she "deliberately withheld information about [her] pregnancy with [I.N.]" and "ha[d] not remedied the

2

issues that led to [her] adjudication[] in this case" or "the issues that led to her prior involuntary terminations." Additionally, the DHS and the guardian jointly sought to rescind the petitioner's improvement period.

On February 27, 2025, the circuit court held an adjudicatory hearing on the second amended petition. The petitioner stipulated to the allegations therein, and the court adjudicated her as an abusing and neglecting parent to I.N. After the hearing, the circuit court entered an order terminating the petitioner's improvement period, finding that the petitioner's failure to disclose her pregnancy "constitute[d] a fraud upon the Court, a basic lack of honesty[,] and a conscious lack of cooperation with CPS," which demonstrated that she was "unwilling and unable to fully acknowledge the existence of [her] problems thus making those problems untreatable and making continuation of [her] improvement period[] an exercise in futility at the expense of the children." The court further found that the petitioner had not remedied the issues that led to the prior involuntary termination of her parental rights.

In May 2025, the circuit court held two dispositional hearings. At the outset of the hearings, the court took judicial notice of the testimony from the December 2024 hearing. The DHS then presented evidence showing that, from December 2024 through May 2025, the petitioner failed to appear for twenty-nine drug screens and tested positive for cocaine in March 2025. Next, the petitioner testified that she missed some drug screens because of her pregnancy and postpartum recovery, was addressing her anger management and addiction issues in therapy, and was participating in parenting classes. The petitioner also admitted that she remained in a relationship and resided with S.N., that S.N. had an alcohol use disorder, and that they continued consuming alcohol despite knowing it was prohibited. Finally, the petitioner denied that she physically abused her older children, claiming that she was "not a violent person." The court also heard testimony from the petitioner's addiction counselor, who testified that the petitioner admitted to buying Suboxone "off the streets" after I.N. was born because "she didn't want to have any slip-ups." The counselor further testified that she was unaware of the petitioner's positive drug screens and confirmed that she was not providing the petitioner with therapy "for any kind of domestic violence." Based on the evidence, the circuit court found that the petitioner was "unable, unwilling or unmotivated to correct [the] conditions of abuse and neglect." Thus, the court found that there was no reasonable likelihood that the petitioner could substantially correct the conditions of neglect or abuse in the near future and that termination of the petitioner's parental rights was in the children's best interest and necessary for their welfare. As such, the circuit court terminated the petitioner's parental rights to the children.[4] The petitioner appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's substantive rulings for abuse of discretion, factual findings are reviewed for clear error, and issues of law are reviewed de novo. Syl. Pt. 1, *In re K.S.*, -- W. Va. --, -- S.E.2d --, 2026 WL 1362143 (W. Va. May 15, 2026). As an initial matter, we observe that the circuit court failed to properly establish jurisdiction over A.N. *See* Syl. Pt. 2, *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 801 S.E.2d 216 (2017) ("This Court, on its own motion, will take notice of lack of jurisdiction at any time or at any stage of the litigation pending therein." (quoting

---

[4] The court also terminated the father's parental rights. The permanency plan for the children is adoption in their current placement.

3

Syl. Pt. 2, *In re Boggs' Est.*, 135 W. Va. 288, 63 S.E.2d 497 (1951))). We have held that the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") "is a jurisdictional statute, and the requirements of the statute must be met for a court to have the power to adjudicate child custody disputes." Syl. Pt. 3, *In re A.T.-1*, 248 W. Va. 484, 889 S.E.2d 57 (2023) (quoting Syl. Pt. 6, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008)).

To exercise initial jurisdiction over abuse and neglect proceedings that implicate the UCCJEA, "a court of this state must satisfy one of the four bases of jurisdiction set forth in [West Virginia Code § 48-20-201(a),]" which "have been aptly summarized as 1) 'home state' jurisdiction; 2) 'significant connection' jurisdiction; 3) 'jurisdiction because of declination of jurisdiction'; and 4) 'default' jurisdiction." *In re Z.H.*, 245 W. Va. 456, 464, 859 S.E.2d 399, 407 (2021) (citing *In re J.C.*, 242 W. Va. 165, 171, 832 S.E.2d 91, 97 (2019)). Importantly, "[t]hese jurisdictional bases do not operate alternatively to each other, but rather, in order of priority— reaching the next basis of jurisdiction only if the preceding basis does not resolve the jurisdictional issue." *Id.* In *In re Z.H.*, this Court explained that "home state" jurisdiction is conferred upon a West Virginia court if West Virginia is the child's home state "on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state." *Id.* (quoting W. Va. Code § 49-20-201(a)(1)). Further, the term "home state"

> means the state in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

*Id.* (quoting *Rosen*, 222 W. Va. at 404, 664 S.E.2d at 754, Syl. Pt. 3). When a court of another state has "home state" jurisdiction over a child, a West Virginia court may nevertheless have jurisdiction by meeting the requirements of "significant connection" jurisdiction. West Virginia Code § 48-20-201(a)(2) provides, in relevant part, that a court has "significant connection jurisdiction" when "a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 20-207 or 20-208," in addition to other requirements. *See* Syl. Pt. 4, *In re J.C.*, 242 W. Va. 165, 832 S.E.2d 91 (holding that the declination of jurisdiction by the home state court "is not satisfied by evidence that some other person or entity in the child's home state declined jurisdiction").

Here, the record indicates that A.N. lived with the parents in Ohio from her birth until sometime between February 2024 and July 2024 when they moved to West Virginia. That means, when the DHS commenced the abuse and neglect proceedings on July 10, 2024, A.N. had not resided in West Virginia with the parents for six consecutive months. Thus, Ohio was A.N.'s home state, and the circuit court did not have "home state" jurisdiction over her. Moreover, as there is nothing in the record indicating that a court in Ohio declined to exercise jurisdiction, the circuit court also did not have "significant connection" jurisdiction over A.N. Further, because Ohio had "home state" jurisdiction over A.N. and no court in Ohio declined to exercise jurisdiction, the

circuit court could not have "declination" or "default" jurisdiction over her. *See* W. Va. Code § 48-20-201(a)(3)-(4) (providing that a circuit court could obtain jurisdiction when "[a]ll courts having jurisdiction under subdivision (1) or (2) of this subdivision have declined to exercise jurisdiction" or "[n]o court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2) or (3) of this subsection"). As such, we must vacate the circuit court's October 30, 2024, order adjudicating the petitioner as an abusing parent as it pertains to A.N. Likewise, we must vacate, in part, the circuit court's May 20, 2025, order terminating the petitioner's parental rights only as it pertains to A.N. We remand this case with directions for the circuit court to immediately contact the court with juvenile jurisdiction in Mahoning County, Ohio to inquire whether the Ohio court will decline its jurisdiction in this matter. In the interim, A.N. shall remain with her foster placement while the circuit court resolves the jurisdictional issue. If the Ohio court declines jurisdiction, then the circuit court must hold a de novo adjudicatory and dispositional hearing. However, should the Ohio court choose to exercise jurisdiction, then A.N. must be transferred to the custody of Ohio CPS. *See In re Z.H.*, 245 W. Va. at 472, 859 S.E.2d at 415; *In re J.C.*, 242 W. Va. at 176, 832 S.E.2d at 102.

Turning to the petitioner's assignments of error as they relate to I.N., she first argues that the circuit court erred in granting the DHS's and the guardian's joint request to rescind her motion for a post-adjudicatory improvement period because she had proven that she would fully participate and had remedied the problems that led to her prior involuntary termination. Pursuant to West Virginia Code § 49-4-610(7), "[u]pon the motion by any party, the court shall terminate any improvement period . . . when the court finds that [the parent] has failed to fully participate in the terms of the improvement period." Additionally, we have explained that "a circuit court always has the authority to terminate an improvement period if there is evidence that the parent is not following the conditions prescribed or is failing to make improvement." *In re Brian D.*, 194 W. Va. 623, 636, 461 S.E.2d 129, 142 (1995). Here, the record indicates that the petitioner admitted to being dishonest with the DHS by concealing her pregnancy after the court granted her an improvement period. Based on her dishonesty, the court concluded that the petitioner failed to cooperate with the DHS, which demonstrated her unwillingness to remedy the conditions of abuse. *See* Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("[I]t is . . . within the [circuit] court's discretion to terminate the improvement period before the . . . time frame has expired if the court is not satisfied that the [parent] is making the necessary progress."). Therefore, we discern no error in the court's decision to terminate the petitioner's improvement period.

Finally, the petitioner argues that the circuit court erred in terminating her parental rights because the DHS failed to prove by clear and convincing evidence that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future. She relies on her consistent and appropriate visits with the children; stable housing; voluntary enrollment in therapy and medication-assisted treatment; apology for not disclosing her pregnancy; and parenting classes to argue that she could correct the conditions of abuse and neglect. However, a circuit court may properly find that there is no such likelihood when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help." W. Va. Code § 49-4-604(d). This includes circumstances where the abusing parent is "addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and . . . [has] not responded to or followed through the recommended and appropriate treatment" or has "not responded to or followed through with a reasonable family case

5

plan." W. Va. Code § 49-4-604(d)(1), (3). We commend the petitioner for taking steps to address her substance abuse and mental health. However, despite these steps, she was still unable to remain sober throughout the proceedings, which evidences her inability to solve her substance abuse issues on her own or with help. Indeed, the record shows that, just two months before the dispositional hearings, the petitioner tested positive for cocaine, abused Suboxone without a prescription, and repeatedly consumed alcohol.

Moreover, the petitioner refused to admit to the physical abuse that she perpetrated upon her older children that resulted in the termination of her parental rights. As we have previously explained,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Here, the petitioner accepted no responsibility for the abuse, attempted to minimize her conduct, and received no treatment for her violent behavior. Consequently, the circuit court's finding that the petitioner could not substantially correct the conditions of abuse and neglect in the near future is well-supported by the record, as is the finding that termination of the petitioner's parental rights was necessary for the children's welfare. Accordingly, the circuit court did not err in terminating the petitioner's parental rights. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit courts to terminate parental rights upon finding no reasonable likelihood the conditions of neglect can be substantially corrected in the near future and when necessary for the child's welfare).

For the foregoing reasons, we vacate, the circuit court's October 30, 2024, adjudicatory order; vacate, in part, the May 20, 2025, dispositional order terminating the petitioner's parental rights to A.N.; and remand this matter to the circuit court for further proceedings consistent with this decision and the applicable rules and statutes. With respect to I.N., the circuit court's May 20, 2025, dispositional order is affirmed. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Affirmed, in part; vacated, in part; and remanded, with directions.

**ISSUED:** June 8, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Thomas H. Ewing
Justice Gerald M. Titus III

**DISSENTING:**

Justice Charles S. Trump IV


Trump, Justice, concurring, in part, and dissenting, in part:

The majority's memorandum decision finds that the circuit court did not have subject-matter jurisdiction under the UCCJEA to terminate J.N.'s parental rights to A.N. Accordingly, it vacates the circuit court's termination of J.N.'s parental rights and remands this portion of the case back to the circuit court for further proceedings. I concur in this part of this Court's memorandum decision. "A judgment from a court lacking subject-matter jurisdiction is a nullity." Syl. Pt. 5, in part, *Moore v. Goode*, 180 W. Va. 78, 375 S.E.2d 549 (1988).

However, the memorandum decision then affirms the circuit court's termination of J.N.'s parental rights to I.N. based, *inter alia*, upon petitioner's failure to reveal to the DHS or the circuit court that she was pregnant with I.N. On this point, I dissent. Neither the circuit court nor the majority cites any authority for the proposition that J.N. had a legal duty to disclose her pregnancy to the DHS or the circuit court. I am aware of no such authority, and the circuit court's finding that J.N.'s failure to reveal her pregnancy was a "fraud upon the court" is not grounded in any law. This is especially true in a case such as this where, as the Court has unanimously found, the circuit court was acting without jurisdiction in the case as it had been filed by the DHS. Accordingly, I dissent from the majority as to I.N. and the termination of J.N.'s parental rights as to I.N. I would reverse the judgment of the circuit court and remand the case.