**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.N. and I.N.**

**No. 25-396** (Ohio County CC-35-2024-JA-65 and CC-35-2025-JA-16)

**MEMORANDUM DECISION**

Petitioner Father S.N.[1] appeals the Circuit Court of Ohio County's May 20, 2025, order terminating his parental rights to A.N. and I.N.,[2] arguing that the circuit court erred in terminating his rights without sufficient evidence. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision vacating the circuit court's October 30, 2024, adjudicatory order; affirming, in part, and vacating, in part, its May 20, 2025, dispositional order; and remanding for further proceedings is appropriate, in accordance with the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure.

In 2023, the DHS commenced abuse and neglect proceedings against the mother based on a myriad of allegations involving her three older children, who are not the petitioner's biological children nor are they at issue in this appeal. The allegations primarily included substance abuse; physical abuse; and exposure of those children to the petitioner, who the DHS had deemed an inappropriate person due to his history of domestic violence and substance abuse. Although the DHS did not name the petitioner as a respondent in the mother's case, all three children reported witnessing him abuse drugs. According to the record, the mother became pregnant with A.N. and moved to Ohio to live with the petitioner and his family. The circuit court terminated her parental rights to the older children in November 2023 after she stopped participating and failed to appear for the dispositional hearing.

In January 2024, the mother gave birth to A.N. while living in Ohio with the petitioner. A.N. was born drug-affected, and the mother tested positive for cocaine and buprenorphine. As a result, Child Protective Services ("CPS") in Ohio opened a case against the petitioner and the mother and required them to submit for drug tests. On February 20, 2024, after testing positive for cocaine multiple times, Ohio CPS workers permitted the parents to retain custody of A.N. if they continued living with the paternal grandparents. Despite Ohio CPS's instructions, the parents

---

[1] The petitioner appears by counsel Marc D. Saurbier. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Counsel Joseph J. Moses appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

moved back to West Virginia with A.N., although the exact time is unclear from the appendix record. The DHS received a referral about the family and, on July 10, 2024, filed a petition commencing the proceedings that are the subject of this appeal. In the petition, the DHS alleged that the petitioner abused and neglected A.N. because he was an "inappropriate and violent individual with substance abuse issues and a history of criminal involvement"; abused substances to the extent that it impaired his judgment and ability to properly parent; left A.N. with a caregiver whose home was in a deplorable condition; and failed to protect A.N. from the mother. In September 2024, the DHS filed an amended petition adding details of the Ohio CPS case, noting that the parents were not honest with the Ohio CPS workers and failed to disclose the mother's prior involvement with West Virginia CPS. The amended petition also outlined the petitioner's criminal history, which included convictions for domestic battery in 2016 and burglary and malicious wounding in 2018.

At an adjudicatory hearing in October 2024, the petitioner admitted that he had a criminal history with domestically violent behaviors; that he had substance abuse, mental health, and anger issues; that he knew or should have known of the mother's prior CPS history, involuntary terminations, and history of substance abuse issues; that he failed to protect A.N. from the mother; that he remains in a relationship with the mother; and that he left his child in a home with deplorable and unsanitary living conditions. Based on his admissions, the circuit court adjudicated him as an abusing and neglecting parent. Following the hearing, the petitioner filed a motion for a post-adjudicatory improvement period. At a hearing on his motion in December 2024, the petitioner's addiction counselor testified that since August 2024, she met with the petitioner on a weekly basis to treat his addiction. The counselor further testified that the petitioner reportedly stopped drinking alcohol two to three weeks before the hearing, but she admitted that he failed to follow her recommendation to attend Alcoholics Anonymous meetings and was not taking a prescription medication that would help him abstain from drinking alcohol. Next, the petitioner testified that his substance abuse began in 2013 and that he previously completed substance abuse and domestic violence programs, including an intensive outpatient drug program in 2023. Additionally, the petitioner acknowledged that since July 2024, he missed several drug screens and tested positive for alcohol multiple times. However, he claimed that he stopped drinking alcohol after CPS informed him that he was not allowed to while the case was pending. The petitioner asserted that he abstained from alcohol with peer support from the mother and his counselor and his own willpower. The court took the matter under advisement, and on January 29, 2025, it entered an order granting the petitioner a post-adjudicatory improvement period, finding that his "actions and efforts since the filing of the Petition" showed that he was "likely to fully participate in the improvement period."

Meanwhile, unbeknownst to the DHS and the circuit court, the mother became pregnant, and in February 2025, she gave birth to I.N. Two days after I.N.'s birth, the DHS filed a second amended petition alleging that the petitioner abused and neglected I.N. because he "deliberately withheld information about [the] mother's pregnancy with [I.N.]" and "ha[d] not remedied the issues that led to [his] adjudication[]." The court held an adjudicatory hearing on the second amended petition, during which the petitioner stipulated to the allegations therein, and the court adjudicated him as an abusing and neglecting parent of I.N. After the hearing, the circuit court entered an order terminating the petitioner's improvement period. The court found that the petitioner's failure to disclose the mother's pregnancy "constitute[d] a fraud upon the Court, a

2

basic lack of honesty[,] and a conscious lack of cooperation with CPS," which demonstrated that he was "unwilling and unable to fully acknowledge the existence of [his] problems thus making those problems untreatable and making continuation of their improvement periods an exercise in futility at the expense of the children."

In May 2025, the circuit court held two dispositional hearings. At the outset of the hearings, the court took judicial notice of the testimony from the December 2024 hearing. The DHS presented evidence showing that, from December 2024 through May 2025, the petitioner failed to appear for twenty-eight drug screens, tested positive for alcohol five times, and tested positive for an unprescribed muscle relaxer three times. The petitioner testified and admitted that despite knowing he could not consume alcohol and that he had an alcohol use disorder, he drank "a couple of beers" before bed. The petitioner also stated that an intensive outpatient program would be "a waste of time" because he does not have a problem with alcohol and his improvement period had been terminated. The petitioner confirmed that he remained in a relationship and resided with the mother but claimed he would separate from her if required. Finally, the petitioner denied taking a muscle relaxer and could not explain why he tested positive for it multiple times. Based on the evidence, the circuit court found that the petitioner was "unable, unwilling or unmotivated to correct conditions of abuse and neglect." Thus, the court found that there was no reasonable likelihood that the petitioner could substantially correct the conditions of neglect or abuse in the near future and that termination of the petitioner's parental rights was in the children's best interest and necessary for their welfare. As such, the circuit court terminated the petitioner's parental rights to the children.[3] The petitioner appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's substantive rulings for abuse of discretion, factual findings are reviewed for clear error, and issues of law are reviewed de novo. Syl. Pt. 1, *In re K.S.*, -- W. Va. --, -- S.E.2d --, 2026 WL 1362143 (W. Va. May 15, 2026). As an initial matter, we observe that the circuit court failed to properly establish jurisdiction over A.N. *See* Syl. Pt. 2, *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 801 S.E.2d 216 (2017) ("This Court, on its own motion, will take notice of lack of jurisdiction at any time or at any stage of the litigation pending therein." (quoting Syl. Pt. 2, *In re Boggs' Est.*, 135 W. Va. 288, 63 S.E.2d 497 (1951))). We have held that the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") "is a jurisdictional statute, and the requirements of the statute must be met for a court to have the power to adjudicate child custody disputes." Syl. Pt. 3, in part, *In re A.T.-1*, 248 W. Va. 484, 889 S.E.2d 57 (2023) (quoting Syl. Pt. 6, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008)).

To exercise initial jurisdiction over abuse and neglect proceedings that implicate the UCCJEA, "a court of this state must satisfy one of the four bases of jurisdiction set forth in [West Virginia Code § 48-20-201(a),]" which "have been aptly summarized as 1) 'home state' jurisdiction; 2) 'significant connection' jurisdiction; 3) 'jurisdiction because of declination of jurisdiction'; and 4) 'default' jurisdiction." *In re Z.H.*, 245 W. Va. 456, 464, 859 S.E.2d 399, 407 (2021) (citing *In re J.C.*, 242 W. Va. 165, 171, 832 S.E.2d 91, 97 (2019)). Importantly, "[t]hese

---

[3] The court also terminated the mother's parental rights. The permanency plan for the children is adoption in their current placement.

3

jurisdictional bases do not operate alternatively to each other, but rather, in order of priority—reaching the next basis of jurisdiction only if the preceding basis does not resolve the jurisdictional issue." *Id.* In *In re Z.H.*, this Court explained that "home state" jurisdiction is conferred upon a West Virginia court if West Virginia is the child's home state "on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state." *Id.* (quoting W. Va. Code § 49-20-201(a)(1)). Further, the term "home state"

> means the state in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

*Id.* (quoting *Rosen*, 222 W. Va. at 404, 664 S.E.2d at 754, Syl. Pt. 3). When a court of another state has "home state" jurisdiction over a child, a West Virginia court may nevertheless have jurisdiction by meeting the requirements of "significant connection" jurisdiction. West Virginia Code § 48-20-201(a)(2) provides, in relevant part, that a court has "significant connection jurisdiction" when "a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 20-207 or 20-208," in addition to other requirements. *See In re J.C.*, 242 W. Va. at 173, 832 S.E.2d at 99, Syl. Pt. 4, in part (holding that the declination of jurisdiction by the home state court "is not satisfied by evidence that some other person or entity in the child's home state declined jurisdiction").

Here, the record indicates that A.N. lived with the parents in Ohio from her birth until sometime between February 2024 and July 2024, when they moved to West Virginia. That means, when the DHS commenced the abuse and neglect proceedings on July 10, 2024, A.N. had not resided in West Virgina with the parents for six consecutive months. Thus, Ohio was A.N.'s home state, and the circuit court did not have "home state" jurisdiction over her. Moreover, as there is nothing in the record indicating that a court in Ohio declined to exercise jurisdiction, the circuit court also did not have "significant connection" jurisdiction over A.N. Further, because Ohio had "home state" jurisdiction over A.N. and no court in Ohio declined to exercise jurisdiction, the circuit court could not have "declination" or "default" jurisdiction over her. *See* W. Va. Code § 48-20-201(a)(3)-(4) (providing that a circuit court could obtain jurisdiction when "[a]ll courts having jurisdiction under subdivision (1) or (2) of this subdivision have declined to exercise jurisdiction" or "[n]o court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2) or (3) of this subsection"). As such, we must vacate the circuit court's October 30, 2024, order adjudicating the petitioner as an abusing parent as it pertains to A.N. Likewise, we must vacate, in part, the circuit court's May 20, 2025, order terminating the petitioner's parental rights only as it pertains to A.N. We remand this case with directions for the circuit court to immediately contact the court with juvenile jurisdiction in Mahoning County, Ohio to inquire whether the Ohio court will decline its jurisdiction in this matter. In the interim, A.N. shall remain with her foster placement while the circuit court resolves the jurisdictional issue. If the Ohio court declines jurisdiction, then the circuit court must hold a de novo adjudicatory and

4

dispositional hearing. However, should the Ohio court choose to exercise jurisdiction, then A.N. must be transferred to the custody of Ohio CPS. *See In re Z.H.*, 245 W. Va. at 472, 859 S.E.2d at 415; *In re J.C.*, 242 W. Va. at 176, 832 S.E.2d at 102.

Turning to the petitioner's assignment of error as it relates to I.N., he argues that the circuit court erred in terminating his "parental rights on the basis of evidence insufficient to meet the clear and convincing standard." In support, the petitioner argues that by terminating his improvement period early, "there had not been sufficient time for clear and convincing evidence to be established." We disagree. West Virginia Code § 49-4-604(c)(6) permits circuit courts to terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." A circuit court may properly find that there was no reasonable likelihood that conditions of abuse or neglect could be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his] own or with help." W. Va. Code § 49-4-604(d). This includes circumstances where the abusing parent is "addicted to alcohol . . . to the extent that proper parenting skills have been seriously impaired and . . . [has] not responded to or followed through the recommended and appropriate treatment." W. Va. Code § 49-4-604(d)(1).

Here, the DHS presented evidence that the petitioner failed to address his addiction to substances, primarily alcohol, since the proceedings began in July 2024. The record shows that the petitioner inconsistently participated in drug and alcohol screens, continued consuming alcohol and other nonprescribed substances, and failed to engage in treatment for his alcohol use disorder. Moreover, the petitioner refused to acknowledge his alcoholism. We have repeatedly explained that "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem . . . results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Further, the court had ample evidence upon which to find that termination was necessary for I.N.'s welfare—a finding that the petitioner does not challenge on appeal. Accordingly, termination was not in error. *See* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) ("Termination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980))).

For the foregoing reasons, we vacate, the circuit court's October 30, 2024, adjudicatory order; vacate, in part, the May 20, 2025, dispositional order terminating the petitioner's parental rights to A.N.; and remand this matter to the circuit court for further proceedings consistent with this decision and the applicable rules and statutes. With respect to I.N., the circuit court's May 20, 2025, dispositional order is affirmed. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Affirmed, in part; vacated, in part; and remanded, with directions.

**ISSUED:** June 8, 2026


**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Thomas H. Ewing
Justice Gerald M. Titus III

**DISSENTING:**

Justice Charles S. Trump IV


Trump, Justice, concurring, in part, and dissenting in part:

 For the reasons set forth in my separate opinion in *In re A.N. and I.N.*, No. 25-402, I respectfully concur in the memorandum decision's disposition as to A.N. but dissent to the memorandum decision's disposition concerning I.N.