IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

**FILED**

**June 10, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 24-20

ANDREA DALE DYE,
Petitioner,

v.

FARMERS & MECHANICS MUTUAL INSURANCE
COMPANY OF WEST VIRGINIA,
Respondent.

Appeal from the Intermediate Court of Appeals
No. 22-ICA-301
(Circuit Court of Marion County No. 18-C-110)

AFFIRMED

Submitted:  March 25, 2026
Filed:  June 10, 2026

Eric M. Hayhurst, Esq.
Hayhurst Law, PLLC
Morgantown, West Virginia
Counsel for the Petitioner

Brent K. Kesner, Esq.
Ernest G. Hentschel, II, Esq.
Kesner & Kesner, PLLC
Charleston, West Virginia
Counsel for the Respondent

JUSTICE TITUS delivered the Opinion of the Court.
JUSTICES WOOTON AND TRUMP concur, in part, and dissent, in part, and reserve the right to file dissenting opinions.

SYLLABUS BY THE COURT

1.      "On appeal of a decision from the Intermediate Court of Appeals of West Virginia, the Supreme Court of Appeals of West Virginia applies a de novo standard of appellate review to a circuit court's entry of summary judgment."  Syl. Pt. 1, *Moorhead v. W. Va. Army Nat'l Guard*, 251 W. Va. 600, 915 S.E.2d 378 (2025).

2.      "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove."  Syl. Pt. 4, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

3.      "'Although the doctrines of waiver and estoppel are both grounded in equity, they differ significantly in application. To effect a waiver, there must be evidence which demonstrates that a party has intentionally relinquished a known right. Estoppel applies when a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact.' Syllabus point 2, *Ara v. Erie Ins. Co.*, 182 W. Va. 266, 387 S.E.2d 320 (1989).'"  Syl. Pt. 1, *Potesta v. U.S. Fidelity & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998).

4.	"Generally, the principles of waiver and estoppel are inoperable to extend coverage beyond the terms of an insurance contract."  Syl. Pt. 5, *Potesta v. U.S. Fidelity & Guar. Co*., 202 W. Va. 308, 504 S.E.2d 135 (1998).

5.	"Exceptions to the general rule that the doctrine of estoppel may not be used to extend insurance coverage beyond the terms of an insurance contract, include, but are not necessarily limited to, instances where an insured has been prejudiced because: (1) an insurer's, or its agent's, misrepresentation made at the policy's inception resulted in the insured being prohibited from procuring the coverage s/he desired; (2) an insurer has represented the insured without a reservation of rights; and (3) the insurer has acted in bad faith."  Syl. Pt. 7, *Potesta v. U.S. Fidelity & Guar. Co*., 202 W. Va. 308, 504 S.E.2d 135 (1998).

6.	"Language in an insurance policy should be given its plain, ordinary meaning."  Syl. Pt. 1, *Soliva v. Shand, Morahan & Co*., *Inc*., 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled on other grounds by National Mut. Ins. Co. v. McMahon & Sons, Inc*., 177 W. Va. 734, 356 S.E.2d 488 (1987).

7.	"Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."  Syl., *Keffer v. Prudential Ins. Co. of America*, 153 W. Va. 813, 172 S.E.2d 714 (1970).

**TITUS, Justice**:

In 2018, the petitioner, Andrea Dale Dye, was named as a defendant in a timber trespass action that was filed by Gregory S. Bradley and Judy Johnson Bradley ("the Bradleys") in the Circuit Court of Marion County ("underlying case"). Ms. Dye's homeowner's insurance company, Farmers & Mechanics Mutual Insurance Company of West Virginia ("F&M") defended Ms. Dye against the Bradleys' claims subject to a reservation of rights to contest coverage. On October 22, 2018, F&M sought to intervene in the underlying case to seek a declaratory judgment as to the coverage issues. After concluding that an exclusion in Ms. Dye's homeowner's policy ("F&M Policy") precluded coverage, the circuit court granted summary judgment to F&M on the issue of coverage. Ms. Dye appealed to the Intermediate Court of Appeals ("ICA"), and in a memorandum decision issued on November 16, 2023, the ICA affirmed the circuit court's summary judgment order.[1]

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we affirm the decision of the ICA finding that the circuit court did not err in granting summary judgment to F&M on the coverage issue.

## I. FACTUAL AND PROCEDURAL HISTORY

---

[1] *Dye v. Farmers & Mechanics Mut. Ins. Co. of W. Va.*, No. 22-ICA-301, 2023 WL 7922892 (W. Va. Ct. App. Nov. 16, 2023) (memorandum decision).

1

According to Ms. Dye, in late 2015, she was approached by Larry Jones of Jones Hauling about obtaining a temporary easement across her land to remove timber from the property of one of her neighbors, the Hayeses.[2]  During that conversation, Mr. Jones inquired about also timbering Ms. Dye's property, and in that regard, he provided her with a "Timber Sale Contract" to review.  On January 10, 2016, Ms. Dye and Mr. Jones d/b/a Jones Hauling entered into a "Timber Sale Contract" for the sale of "all standing timber, as herein defined, growing on and forming a part of real property owned by [Ms. Dye]." It is believed that the timbering at issue occurred in early to mid-2016.

During the summer of 2017, the Bradleys visited their property and discovered that it had been timbered.  The Bradleys reported the theft of their timber and thereafter, on July 25, 2018, they filed a complaint against Ms. Dye and others seeking to recover for the timber theft, property destruction, and treble damages.[3]  Because the instant case involves an insurance coverage dispute, we limit our review to that issue.[4]

---

[2] The Hayeses' property bordered Ms. Dye's property.

[3] In the underlying case, the additional named defendants were Mr. Jones and his wife, Roberta, individually and d/b/a Jones Hauling and other unknown defendants.  The Bradleys sought treble damages pursuant to West Virginia Code § 61-3-48a.

[4] The underlying case was previously before this Court.  *See Bradley v. Dye*, 247 W. Va. 100, 875 S.E.2d 238 (2022) (reversing the circuit court's grant of summary judgment to Ms. Dye on various grounds).

On October 22, 2018, F&M filed a Motion to Intervene in the underlying case to seek a declaratory judgment with respect to the coverage issues. This motion was granted on February 19, 2019, and F&M filed its Third-Party Complaint for Declaratory Judgment. Thereafter, F&M filed a motion for summary judgment in which it asserted that: (1) Ms. Dye was not entitled to coverage or to a defense under the F&M policy because the acts alleged in the Bradleys' complaint did not constitute an "occurrence" as defined in the F&M Policy; and (2) even if the acts alleged in the Bradleys' complaint were found to satisfy the F&M Policy definition of an "occurrence," several exclusions within the F&M Policy barred coverage and indemnity. The circuit court denied F&M's motion for summary judgment. Following this ruling, Ms. Dye added counterclaims against F&M alleging "bad faith," violations of the West Virginia Unfair Trade Practices Act, and "Hayseeds damages."[5]

In January 2020, the Bradleys made a policy limits demand for settlement against Ms. Dye and F&M; however, this demand was withdrawn by letter dated April 10, 2020. At a mediation held on May 12, 2020, Ms. Dye demanded $100,000 from F&M to resolve her claims for attorney fees, breach of contract, and bad faith. By letter dated May 22, 2020, Susan Snowden, counsel for F&M made a monetary offer to settle "any and all" of Ms. Dye's claims against F&M for $15,000. By letter dated June 4, 2020, Rose Casey, a Litigation Claims Specialist for F&M, sent a letter to Ms. Dye's counsel informing him

---

[5] *Hayseeds, Inc. v. State Farm Fire & Casualty*, 177 W. Va. 323, 352 S.E.2d 73 (1986).

3

that if F&M received "a demand within the policy limits and are unable to resolve the matter within policy limits and proceed to trial, that should a verdict be returned in excess of the policy limits, F&M would satisfy the entire amount of the verdict."[6]

On October 19, 2020, Ms. Dye filed a motion for summary judgment and asserted that Ms. Casey's letter waived F&M's coverage position and operated as a forfeiture of F&M's prior reservation of rights. According to Ms. Dye, Ms. Casey's letter was "dispositive" because it was "an admission by F&M that the liability coverage under the [F&M Policy] is applicable and the allegations against Ms. Dye meet the definition of 'occurrence,' despite any potential jury findings as to intent." In response, F&M asserted that the June 4, 2020, letter did not operate as a waiver or relinquishment of its rights under the F&M Policy.

On January 20, 2021, F&M filed a supplemental response to Ms. Dye's outstanding motion for summary judgment on the insurance coverage issue; F&M also asked the circuit court to reconsider its prior rulings on the issue of coverage. On January 25, 2021, the parties appeared for a hearing on Ms. Dye's motion for summary judgment on the coverage issue and for F&M's request for reconsideration. By order entered on November 10, 2022, the circuit court denied Ms. Dye's motion for summary judgment after concluding that her claims of waiver and estoppel failed as a matter of law. The circuit

---

[6] It appears that Ms. Casey's letter was sent in an effort to address the type of exposure discussed in *Shamblin v. Nationwide*, 183 W. Va. 585, 396 S.E.2d 766.

4

court granted F&M's motion for reconsideration of its previously-denied motion for summary judgment and ultimately granted summary judgment in favor of F&M after concluding that a business exclusion in the F&M Policy applied to exclude coverage.

Ms. Dye appealed the circuit court's order to the ICA, assigning error to the circuit court's rulings, which: (1) rejected her claims regarding estoppel and waiver; (2) concluded that she was not covered under F&M's Policy based on the business exclusion; and (3) concluded that she was not covered under F&M's Policy because there was no occurrence under the policy. The ICA affirmed the circuit court's summary judgment order by memorandum decision issued on November 16, 2023. With respect to Ms. Dye's claim that F&M is estopped from asserting coverage defenses, the ICA concluded that Ms. Dye failed to prove how she detrimentally relied upon the Snowden and Casey letters. With respect to waiver, the ICA concluded that Ms. Snowden and Ms. Casey's letters did not take a position that was inconsistent with F&M's initial reservation of rights. Although the ICA disagreed with the circuit court's finding as to which portion of the business exclusion applied to exclude coverage, it affirmed the circuit court's ruling that Ms. Dye was not covered under the F&M policy pursuant to another portion of the business exclusion.[7]

---

[7] Because the ICA concluded that Ms. Dye's claim is not covered under the F&M Policy, it declined to address Ms. Dye's claim that the circuit court erred by concluding that the acts did not constitute an "occurrence" under the F&M Policy.

5

Ms. Dye now appeals the ICA's memorandum decision to this Court.

## II. STANDARD OF REVIEW

"On appeal of a decision from the Intermediate Court of Appeals of West Virginia, the Supreme Court of Appeals of West Virginia applies a de novo standard of appellate review to a circuit court's entry of summary judgment." Syl. Pt. 1, *Moorhead v. W. Va. Army Nat'l Guard*, 251 W. Va. 600, 915 S.E.2d 378 (2025). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." W. Va. R. Civ. P. 56(a). *See also* Syl. Pt. 4, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove."). Based on these standards, this Court will consider the parties' arguments.

## III. DISCUSSION

Before this Court, Ms. Dye asserts five assignments of error. In her first and second assignments of error, she argues, as she did before the ICA, that F&M waived its coverage defenses and is estopped from asserting any such defenses. With respect to waiver, Ms. Dye argues that F&M waived its coverage defenses because it made a "direct promise" to her that it would protect her from any financial exposure, satisfy the entire amount of a verdict and continue to vigorously defend her in the underlying case, as set

6

forth in the letters sent by Ms. Snowden and Ms. Casey. These same letters also form the

basis of Ms. Dye's estoppel argument as she asserts that, upon receiving the letters, she did

not conduct any further discovery on the coverage issue because she believed that F&M

"had abandoned its position on the 'occurrence' issue."

There is no dispute regarding the content of the letters sent by Ms. Snowden

and Ms. Casey. Ms. Snowden's letter to Ms. Dye's counsel was dated May 22, 2020, and

reads, in relevant part, as follows:

> Dear Eric:
>
> As I indicated in our last conversation, F&M would like to resolve its outstanding issues with Ms. Dye at this time, and continue to defend the claims against her brought by Plaintiffs, Gregory S. Bradley and Judy Johnson Bradley. Thank you for forwarding to my attention the legal fees which you indicated are associated with the matter so far. At this time, F&M offers to settle any and all claims against F&M by your client, Andrea Dale Dye, in exchange for payment of $15,000. F&M will further issue to your client an excess protection letter whereby it would agree that in the event that it is unable to resolve the case and a verdict should be returned in excess of the policy limits, that F&M would satisfy the entire amount of the verdict. Such an agreement would completely protect Ms. Dye from any financial exposure. Further, F&M would continue to vigorously defend your client against Plaintiffs' claims through the law firm of Bailey Wyant PLLC. This offer of settlement is made without admission of liability, is inclusive of a signed release of any and all claims, to include attorney fees.

Ms. Casey's letter to Ms. Dye's counsel was dated June 4, 2020, and reads,

in relevant part, as follows:

Dear Eric:

Please be advised that we are in receipt of the demand from Plaintiffs in this matter for the sum of $101,000. This is to inform you that if we receive a demand within the policy limits and are unable to resolve the matter within policy limits and proceed to trial, that should a verdict be returned in excess of the policy limits, F&M would satisfy the entire amount of the verdict.

F&M will continue to vigorously defend this case on Ms. Dye's behalf against Plaintiffs' claims through the law firm of Bailey Wyant PLLC.

As noted above, Ms. Dye relies upon these letters in support of her arguments regarding waiver and estoppel.

'Although the doctrines of waiver and estoppel are both grounded in equity, they differ significantly in application. To effect a waiver, there must be evidence which demonstrates that a party has intentionally relinquished a known right. Estoppel applies when a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact.' Syllabus point 2, *Ara v. Erie Ins. Co.*, 182 W. Va. 266, 387 S.E.2d 320 (1989).

Syl. Pt. 1, *Potesta v. U.S. Fidelity & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998).

Despite Ms. Dye's assertions to the contrary, we find no evidence demonstrating that F&M "intentionally relinquished" its coverages defenses. F&M sent Ms. Dye a reservation of rights letter within three months of the filing of the Bradleys' complaint. This seven-page letter detailed the claims that had been made against Ms. Dye

8

and indicated that F&M "asserts a complete reservation of all rights concerning its duty to defend and indemnify" Ms. Dye. Thereafter, F&M moved to intervene for the purpose of seeking a declaratory judgment with respect to the coverage issues and thus, reasserting its reservation of rights. Since filing its third-party complaint for declaratory judgment, F&M—consistent with its reservation of rights—actively participated in this case by participating in discovery and filing and responding to dispositive motions, which culminated in the instant appeal.

Although the parties dispute the import of the Snowden and Casey letters, we conclude that neither letter waived F&M's coverage defenses as the letters did not contain language withdrawing F&M's prior coverage position. "[W]aiver cannot create coverage where none is contracted for by the parties." *Potesta* at 320, 504 S.E.2d at 147. Because we conclude, *infra*, that no coverage exists due to the business exclusion, waiver cannot be used in this case to create coverage.

We similarly find no merit to Ms. Dye's claim that "West Virgina law demands that F&M be estopped from asserting any further coverage defenses." "Estoppel applies when a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact." *Id.* at 309–310, 504 S.E.2d at 136–137, Syl. Pt. 1, in part. According to Ms. Dye, she relied upon the letters authored by Ms. Snowden and Ms. Casey and "believed that F&M had abandoned its position on the 'occurrence' issue." For this reason, Ms. Dye

9

claims that she did not conduct any further discovery on the coverage issues. However, these letters contain no misrepresentations nor do we glean any concealment of material fact in the letters.

Ms. Dye also contends that the coverage under the F&M Policy should be extended because of F&M's "egregious actions" toward her. According to Ms. Dye, F&M acted in bad faith by: (1) making misrepresentations to her and the circuit court; (2) taking positions about her conduct, which are contrary to the facts of evidence in this case; (3) making promises that it then attempted to revoke; (4) revoking an offer regarding the payment of attorney fees; and (5) using the business exclusion to deny coverage after the close of discovery. We disagree.

Ms. Dye acknowledges that "[g]enerally, the principles of waiver and estoppel are inoperable to extend coverage beyond the terms of an insurance contract." *Id.* at 320, 504 S.E.2d at 147, Syl. Pt. 5. However, she asserts that F&M's bad faith constitutes an exception to this general principle. In *Potesta*, we held:

> Exceptions to the general rule that the doctrine of estoppel may not be used to extend insurance coverage beyond the terms of an insurance contract, include, but are not necessarily limited to, instances where an insured has been prejudiced because: (1) an insurer's, or its agent's, misrepresentation made at the policy's inception resulted in the insured being prohibited from procuring the coverage s/he desired; (2) an insurer has represented the insured without a reservation of rights; and (3) the insurer has acted in bad faith.

10

*Id.* at 320, 504 S.E.2d at 147, Syl. Pt. 7. We acknowledge and stand by this holding, but we find that it provides no relief for Ms. Dye. F&M has "not declined to defend the insured, and is *continuing* to defend the insured [Ms. Dye] with independent counsel, while simultaneously defending its own declaratory judgment action." *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 345, 801 S.E.2d 216, 223 (2017). Further, as we have previously noted, "an insurer should have the right to defend itself in a plaintiff's declaratory judgment action without risking exposure merely because the strain inherent in litigation discomfits its insured." *Id.*, at 346 n.18, 801 S.E.2d at 224 n.18. For the foregoing reasons, the ICA properly concluded that the principles of waiver and estoppel provide no relief to Ms. Dye.

In her final assignment of error, Ms. Dye argues that the circuit court and the ICA erred in granting summary judgment in favor of F&M on the "business" exclusion contained in the F&M Policy. The "business" exclusion at the center of this issue is contained in the exclusions portion of the F&M Policy, and it indicates that personal liability coverage does not apply to:

> 2. "Business"
>
> a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

11

This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

The circuit court concluded that "[e]ven though [Ms.] Dye did not personally own the logging business, the business pursuits exclusion clearly applies because [Ms.] Dye was 'engaged in' making a profit from the business through her contract with" Jones Hauling. Although the ICA disagreed with the circuit court's conclusion that Ms. Dye was "engaged in" a business, it agreed that the business exclusion nonetheless applied because the Bradleys' property damages claims "arose out of or in connection with a 'business' conducted from an 'insured location[.]'" *Dye v. Farmers & Mechanics Mut. Ins. Co. of W. Va.*, No. 22-ICA-301, 2023 WL 7922892, at \*9 (W. Va. Ct. App. Nov. 16, 2023) (memorandum decision).

On appeal to this Court, Ms. Dye argues that the "business" exclusion does not apply for the following reasons: (1) the "business" exclusion at issue was intended to be applied to the conduct of the insured, not a third party; (2) it is beyond the reasonable expectations of Ms. Dye to preclude coverage based on the conduct of a business by a third party on her property; (3) there is a genuine issue of material fact as to whether Jones

12

Hauling conducted business from an insured location; and (4) Ms. Dye was not engaged in a business.[8]

Initially, Ms. Dye asserts that the "business" referenced in the "business" exclusion only applies to a business engaged in by either herself or another insured under the F&M Policy, not a business operated by a third party such as Jones Hauling. We find no merit to this argument. "Language in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled on other grounds by National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987). Therefore, in this case, we must look at the specific language of the F&M Policy, which defines "business" as follows:

> "Business" means:
>
> a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or
> b. Any other activity engaged in for money or other compensation, except the following:
> (1) One or more activities not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period[.]

---

[8] The "business" exclusion at issue in this case is not novel. However, as Ms. Dye notes, this Court has not previously addressed whether the "business" referenced in the "business" exclusion contemplates a business of a third party that is conducted from an insured location. This fact, standing alone, however, does not entitle Ms. Dye to relief. Moreover, even if this issue had been addressed under a different policy, the specific definition in the F&M Policy would still control.

This definition does not restrict or limit a "business" to one that is engaged in by an insured. The "business" was timbering. Pursuant to the Timber Sale Contract, Jones Hauling purchased and removed timber, and there is no dispute that Jones Hauling was engaged in a business. Further, as noted infra, Ms. Dye concedes that a "business [was] conducting business on" her property.

The "business" exclusion in the F&M Policy indicates that personal liability coverage does not apply to property damage "arising out of or in connection with a 'business' conducted from an 'insured location' or engaged in by an 'insured', *whether or not the 'business' is owned or operated by an 'insured' or employs an 'insured'*". (Emphasis added). This language is clear.[9] The business referenced in the F&M Policy's "business" exclusion applies to businesses that may not be "owned or operated" by an insured. It logically flows from this language that a business that is not owned or operated by an insured would be owned or operated by a third party. For these reasons, we find this provision of the "business" exclusion to be clear and unambiguous. "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial

---

[9] This language is also distinguishable from the "business *pursuits*" exclusions discussed in other cases where an insurance policy excludes "from personal liability coverage injuries 'arising out of business pursuits *of any insured*'", thereby "contemplate[ing] a continuous or regular activity engaged in *by the insured*." <u>Camden Fire Ins. Ass'n v. Johnson</u>, 170 W. Va. 313, 316, 294 S.E.2d 116, 119 (1982) (emphasis added). Unlike this language, nothing in the F&M Policy ties "business" to the insured.

14

construction or interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co. of America*, 153 W. Va. 813, 172 S.E.2d 714 (1970).[10]

Having concluded that the "business" exclusion applies to Jones Hauling, we now address whether the business was conducted from an insured location. At the outset of our analysis, we note that this portion of the exclusion has not always been properly referenced as the terms "from" and "on" have been used interchangeably in this appeal.[11] To be clear and for the purpose of our review, the exclusion states that personal liability coverage does not apply to **"'property damage' arising out of or in connection with a 'business' conducted from an 'insured location[.]'"** Ms. Dye concedes that a "business [was] conducting business *on*" her property, but she seeks to have this Court reverse the ICA's decision by arguing that there is a genuine issue of material fact as whether Jones

---

[10] Several of Ms. Dye's arguments in support of this assignment of error would require us to conclude that the F&M Policy was ambiguous in order to afford her any relief. For example, Ms. Dye claims that the F&M's Policy contains an inherent ambiguity due to its failure to define the phrases "arising out of," "in connection with," and "conducted from." In addition, we can only consider Ms. Dye's claim about her reasonable expectation as to what coverage the F&M policy would provide if we find that F&M Policy language ambiguous. *See Edwards v. Bestway Trucking*, 212 W. Va. 196, 199, 569 S.E.2d 443, 446 (2002) (The doctrine of reasonable expectations applies "[w]here the language in an insurance policy is ambiguous[,]"). Our review of the alleged ambiguities reveal that these arguments are also without merit.

[11] In its memorandum decision, the ICA found that, "[a]lbeit Ms. Dye did not own the logging company and was not herself engaged in that or any related business, the business exclusion under F&M's policy applies because Jones [Hauling] was a business conducting business *on* her property." (Emphasis added).

15

Hauling conducted its business from[12] an insured location. (Emphasis added).  Merriam-Webster defines "from" as a "function word to indicate the starting or focal point of an activity."  *From*, Merriam-Webster, https://www.merriam-webster.com/dictionary/from (last accessed June 9, 2026).  Certainly, Ms. Dye's property was the "starting point" of the activity that resulted in the Bradleys' claims.  But for Ms. Dye's decisions to grant an easement to Jones Hauling and to enter into the Timber Sale Contract, Jones Hauling would not have had access to the Bradleys' property.  For these reasons, we conclude that the "business" exclusion in the F&M Policy applies and Ms. Dye's claim under the F&M Policy is not covered.[13]

## IV.  CONCLUSION

For the foregoing reasons, we affirm the November 16, 2023, memorandum decision of the ICA.

Affirmed.

---

[12] In her brief before this Court, Ms. Dye asserts that "there is a genuine issue of material fact as to whether Jones Hauling ever conducted business *on* an "insured location[.]" (Emphasis added).  She also asserts that the timbering "occurred *on* the Bradleys' property, and that it cannot be argued that the business conduct complained of in this case was "conducted *from* an insured location."  (Emphasis added).

[13] Having concluded that a portion of the "business" exclusion applies, we decline to address whether Ms. Dye was "engaged in" a business with Jones Hauling.  For the same reason, we also decline to address the "occurrence" issue.

16